# William P. Mills vs. Thomas Matthews, Joseph Matthews, Justus Bruehl and John H. Milburn.

Where parties make a verbal agreement which is afterwards reduced to writing, the latter *merges* the former so as to prohibit the introduction of parol proof to show any variance or contradiction between them; but there is no necessity for applying this rule to cases where the verbal and written contracts *agree* in every respect.

A verbal contract to lease a lot of ground upon which the lessee was to erect houses and the lessor was to make advances to aid in their erection, which advances were to be repaid by the lessee, was subsequently reduced to writing without any alteration. HELD:

1st. That the doctrine of merger did not prohibit either the lessor who made his advances, or material men who furnished materials to the lessee, *before* the agreement was reduced to writing, from resorting to the parol agreement to show what rights were acquired and what acts were done under it.

2nd. By the act of 1845, ch. 287, the liens of the material men only attach upon the interest of the lessee, and they can only claim to the extent of his rights, founded upon this agreement, which gave them existence.

3rd. The repayment of the advances being one of the conditions upon which the lease was to be given, this agreement was not a "mortgage incumbrance or lien" required by the act of 1845 to be recorded, so as to be preferred over liens for work and materials.

4th. These material men do not stand in the position of a *bona fide* purchaser without notice; the lessee and lessor both having, at the time the buildings were commenced, nothing but an unrecorded equitable interest, the law imposed upon the material men the necessity of enquiring into the title of the lessee.

5th. The lessee having no title except under this agreement, which provided also for the repayment of the advances made by the lessor, the material men must be regarded as having constructive notice, at least, of the outstanding claim of the lessor for this advances, and this claim is entitled to a preference over theirs acquired under the mechanics lien laws.

APPEAL from the Equity Side of the Superior Court of Baltimore city.

In this case certain property was sold under a decree of the court below, and a controversy arose in the distribution of the proceeds whether the claim of the appellant, for certain advances made by him, or that of the appellees, under the mechanics lien laws, for materials furnished, was entitled to a prefer-

ence.   The contract under which the appellant made his advances, and all the facts of the case, are fully stated in the opinion of this court.   From the order of the court below (FRICK, J.,) ratifying the report of the auditor giving preference to the claim of the appellees, and overruling his exceptions thereto, the appellant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*George M. Gill* for the appellant, argued:

1st. The act of 1845, ch. 287, sec. 7, in express terms, limits the mechanics lien to the interest of the tenant at the time of the commencement of the building.   The only question then seems to be, what was the interest of Milburn in these houses when he commenced them?   It is immaterial how this interest is shown, whether by a verbal or a written contract.   The only difference that can exist is, that it may be more difficult to show the interest where it is evidenced by a verbal contract.   In this case that difficulty does not exist, as the written and oral contracts are, in all respects, identical. Milburn's interest, when he commenced, is clearly shown; the material men can affect that interest, but nothing else.   The object of the act of 1845 would seem to be clear, and defined with precision.   It is as if each material man was told, that if he furnished materials to a tenant or lessee, he could claim a lien only upon his interest.   See *Scales vs. Griffin,* 2 *Douglass, (Mich. Rep.,)* 54.   *Brown vs. Morison,* 5 *Pike,* 217. 14 *Penn. State Rep.,* 120, *Haworth, et al., vs. Wallace, et al.*

2nd. If the contract between Mills and Milburn had never been reduced to writing, and there had been no part performance, it would have been void as a parol contract relating to lands; but it had been partly performed, and a court of equity would have enforced performance.   Here the contract, when the houses were begun, although verbal, was sufficient to show the interest of Milburn, and does clearly show it.   Mills, in signing the written contract of 18th August, made no change in that interest, and therefore worked no prejudice to the ma-

Mills *vs.* Matthews, *et al.*

terial men; and, in fact, did no more, (there having been previously thereto a part performance,) than what a court of equity would have compelled him to do. If there had been nothing but an oral contract, the terms of which were clearly shown, then Mills' claim must have been allowed. The execution of a written contract subsequently, there being no change made by it, cannot produce any effect.

3rd. It is said, however, that the verbal contract in this case, although known to and agreed to by Milburn, was not known to the material men, and that as respects them the contract is null and void, because it was not reduced to writing, acknowledged and recorded before the houses were begun. This presents the question of the construction of the act of 1845, ch. 287, sec. 7, upon which, in truth, this case must turn. We have seen that under this law the interest of the tenant or lessee alone is affected by the mechanics lien. The interest of the landlord is protected. Whatever agreements or stipulations on the part of the tenant, which the landlord may make a part of his contract with his tenant, are to remain unimpaired and in full force. It is not material whether the material men knew of this or not. The landlord is not bound to give notice, even the implied notice of recording. This section, while it requires that mortgages, incumbrances and liens which attached before the commencement of the houses, and which, by the existing laws of the State, are required to be recorded before the commencement of the houses, in express terms, exempts leases, and does not require them to be recorded before the commencement of the houses. The building contract in this case must be regarded either as a sub-lease or as a contract to give, upon certain terms, five sub-leases. If either, it is not required by the terms of this law to be recorded before the commencement of the houses in question. If a sub-lease, it is, by express terms, exempt, as the word lease necessarily includes a sub-lease. If it be a contract to give sub-leases, although under the act of 1831, ch. 205, sec. 3, it may be recorded, yet it is not thereby, nor by any previous law, *required* to be recorded.

4th. It is said, however, that this contract, though not in

form, is virtually a mortgage.   A party cannot mortgage that
which he does not own, and in which he has no interest what-
ever.   If this be a mortgage, who is the mortgagor and who is
the mortgagee ?   Milburn cannot be the mortgagor, because
independently of this contract he has no interest; nor can Mills
be the mortgagee, because he has not parted with his interest
in the property.   This paper may resemble a mortgage, but to
call it a mortgage is a mistake.   It is a contract to lease, also a
contract to make advances to aid the builder in erecting houses.
The legal title of the property remained in Mills.   Milburn
had a right of possession, but as tenant or lessee for years; or
if not, as a party holding under a contract, by which he may
become a tenant or lessee for years.   If Mills had given a sub-
lease to Milburn and had taken a mortgage to secure advances,
then the mortgage must have been recorded, because by the sub-
lease the legal title passed to the lessee, and he could mortgage
this interest; here, however, the legal title remained in Mills.

5th.   The act of 1838, ch. 205, sec. 9, postpones the liens of
mechanics in favor of other liens or incumbrances attaching
before the commencement of building, and that whether these
liens and incumbrances be or be not *recorded* before the said
commencement.   It was a matter in doubt who was to be con-
sidered the owner, whether the person who holds the inherit-
ance or the tenant.   The act of 1845, ch. 287, sec. 7, settles,
that the lessee or tenant is to be considered as the owner, and
that the lien of mechanics shall extend to his interest.   The
landlord's interest is not thereby affected.   This law, when it
refers to mortgages, incumbrance and liens, (other than leases,
thereby excluding leases,) which attached prior to the com-
mencement of the building, *and which, by the laws, are re-
quired to be recorded*, declares, that all such shall be postponed
unless recorded prior to the commencement of the building.
In this case Milburn was a tenant or lessee, and his interest
alone can be affected by the lien.   In the contract, by which
he became tenant and which fixes his interest in the buildings,
he obligates himself to build and to return the money to be
advanced, and such money is a lien upon the building.   The
contract in this case, although verbal, yet was entered into

before the buildings commenced. The lien or incumbrance is then necessarily created before commencement of the buildings. The question then, and the only question, is, was it necessary to reduce this contract to writing and record it before the houses were begun? It was not necessary—no law of this State rendered the recording necessary. This contract is in the nature of a bond of conveyance, and there was no necessity to record it.

6th. Act 1715, ch. 47, sec. 8, declares, that no estate above seven years shall pass, except by deed enrolled within six months. Act 1766, ch. 14, sec. 2, declares, that no estate, or inheritance or free-hold, or any declaration or limitation of use, or any estate above seven years, shall pass, except by deed duly acknowledged and recorded. The above are the laws which require the recording of deeds. Act 1831, ch. 205, sec. 3, authorises, but does not require, the recording of writings obligatory or contracts for conveyance of lands or tenements; and also contracts for leasing and demising for any term of years. The contract in this case was a contract of lease; upon the performance of certain stipulations leases were to be given. An agreement such as this might have been recorded, but certainly it was not necessary to record it. *Burke vs. Negro Joe,* 6 *G. & J.,* 141.

*C. L. L. Leary* and *Wm. J. Ward* for the appellees.

The liens of the appellees under the mechanics lien laws attached at the time of and from the commencement of the buildings, and this commencement was at the breaking of the ground for excavating cellars, on the 15th of August 1849. 5 *Rawle,* 291, *Pennock vs. Hoover. Sergeant's Mechanics Lien Law,* 25. 3 *Md. Rep.,* 234, *Wells & Miller, vs. The Canton Company. Act of* 1845, *ch.* 176, *sec.* 1.

Now we say, that in view of the act of 1845, ch. 287, sec. 7, the contract between Mills and Milburn either created a lien *subsequent* to the commencement of the buildings, or if it was a *prior* one, still it was in fact a mortgage, and not having been recorded until *after* the buildings were commenced, it is within the *proviso* to this section. By this law all liens which

attach subsequently to the commencement of the buildings are unconditionally postponed to that of the mechanics. The claim of the appellant accrued and attached on the 18th of August, when his contract under seal with Milburn was placed on record. This written contract is what constitutes the lien and upon this the parties must stand; for it *merged* the prior parol agreement, which cannot avail to create in favor of the appellant a preference over the claim of the appellees in the absence of any notice to them of such verbal agreement, and no such notice was pretended or proved. The written contract cannot *relate back* to the parol agreement, (5 *Md. Rep.*, 66, *Albert & Wife, vs. Winn & Ross.* 6 *Do.*, 172, *Worthington vs. Bullitt, et al.,*) and besides, this parol agreement is void under the statute of frauds. 5 *Gill*, 138, *Alexander vs. Ghiselin.* 7 *Do.*, 354, *Clabaugh vs. Byerly.*

But this contract is virtually a mortgage, not a contract for a lease only; not a mere obligation to convey, but was intended as a security for the repayment of the advances and for the payment of interest thereon, and although in form differing from the usual phraseology of a deed of mortgage, it embraces all the essential and peculiar features of such a conveyance, and as such should have been recorded conformably to the requisitions of the registry acts. 4 *Kent's Com.*, 145. Mortgages of equitable interests are required to be recorded. 6 *Md. Rep.*, 52, *Alderson vs. Ames & Day.* 3 *Md. Ch. Dec.*, 381, *United States Ins. Co. vs. Shriver.* 1 *G. & J.*, 366, *Hays vs. Richardson.* See also the acts of 1825, ch. 203, sec. 4; 1831, ch. 304, and 1831, ch. 205, sec. 3, which says that all contracts for leasing, &c., may be recorded. See also 7 *Gill*, 354. 7 *Watts*, 9, *Bickel vs. James.* 4 *Penn. State Rep.*, 126, *Lyon vs. McGuffey.* 2 *Browne*, 329, *Mitchell vs. Evans.* No formal words are necessary to constitute a mortgage; the intention of the parties is to determine the character of the instrument. 5 *G. & J.*, 86, *Hicks vs. Hicks.* We say, therefore, that this was a mortgage, and the failure of the appellant to have it executed and recorded before the commencement of the buildings in question, is fatal to his pretensions as to priority of payment.

ECCLESTON, J., delivered the opinion of this court.

On the 18th of August 1849, Mills and Milburn entered into a written contract under seal, which was recorded the same day, and therein the former agreed to sub-lease to the latter, for ninety-eight years, renewable forever, a lot of ground in the city of Baltimore. Milburn agreeing to erect on the lot, at his own cost and expense, five brick dwelling-houses, and Mills contracting to advance, as a loan to Milburn, to aid him in the erection of the houses, the sum of $300 on each house. Milburn covenanted that the houses should be finished, and that he would repay the money advanced and all interest thereon, on or before the 1st of January 1853. And in case of default in the payment of the money advanced or interest thereon, or of ground-rent, taxes, or insurance premiums, the contract secured to Mills the right to reenter on the premises, or any part thereof, in the name of the whole, and thereupon the contract was to be in trust, that Mills might enter into bond, as required by the laws of Maryland relating to the sale of property by trustees under deeds of trust, so that the premises, with the improvements, might be sold and the proceeds applied in reimbursing the money advanced, and paying all costs, &c., and the balance, if any, paid over to Milburn. The contract also provided, that upon the completion of the houses and the return of the advances, Milburn was to receive five sub-leases at the yearly rents agreed upon.

It is conceded that on the 15th of August 1849, these parties made a parol contract, similar, in every respect, to the written one above mentioned. They applied to a conveyancer to reduce the contract to writing, but the delay until the 18th was occasioned by his sickness.

On the 15th Milburn commenced the houses. At first Mills objected to this, but when Milburn said he could not help beginning, and was ready to sign the contract as soon as it was written, Mills made no further objection. On the same day materials for the houses were contracted for by Milburn, and part of them were then delivered.

Mills made the advances which he contracted to make, and

41    v.7

they were not returned to him. The claims for materials furnished were also left unpaid. The property was sold under the decree in this case, and the proceeds not being sufficient to pay the advances made by Mills and the claims on account of materials furnished, a question of preference arose between the parties. The court decided in favor of the material men, and from that decision the present appeal is taken.

No question is made in regard to the amount of any or either of the claims, or in reference to the regularity of the proceedings, on the part of the material men, in filing and recording their claims under the lien laws. But it seems to be admitted on both sides, that the decision of the controversy depends very much upon the construction of the 7th section of the act of 1845, ch. 287, as applicable to the facts disclosed in the record. This section enacts: "That when a building shall be erected by a lessee or tenant for life or years of a lot of ground, or by an architect, builder or other person employed by such lessee or tenant, that the lien for work and materials aforesaid, shall apply only to the extent of the interest of the said lessee or tenant for life or years." And after providing for the case of a lot belonging to a married woman, the section then provides: "That the said lien for work and materials shall be preferred to all mortgages, judgments, liens and incumbrances, which attached upon the said building or ground covered thereby, subsequently to the commencement thereof, *provided always*, that mortgages, incumbrances and liens, other than leases which have attached thereto prior to the commencement of the said building, and which, by the existing laws of this State, are required to be recorded, shall not be preferred, but be postponed, unless the same are recorded prior to the commencement of the said building."

It is said on the part of the appellees that the claim for advances is in truth a mortgage, and as such, required by the laws of the State to be recorded; that the written contract having been executed and recorded subsequently to the commencement of the buildings, that claim cannot be preferred to the liens of the appellees. They also insist that the appel-

lant is not entitled to a preference under the parol agreement, whether they are right or not, in supposing his claim is a mortgage and necessary to be recorded, because the written contract merged the one by parol.

This last suggestion necessarily goes to the extent of holding the merger to effect such an entire extinguishment of the parol agreement, as to deny the appellant the right to rely upon it as evidence of his claim in any respect. Now if this be true, the same rule must exclude the appellees from looking to that contract as the foundation of their claims. Their liens can attach only to the interest of Milburn. If by the merger the parol agreement is excluded from consideration, then it is clear from the proof in the cause Milburn had no interest in the premises prior to the execution of the written contract. But we do not think the doctrine of merger prohibits either the appellant or appellees from resorting to the parol agreement to show what rights were acquired, and what acts were done under it.

It is undoubtedly true that if parties make a verbal agreement and afterwards it is reduced to writing, the latter merges the former so as to prohibit the introduction of proof to show any variance or contradiction between them. This rule was wisely adopted upon the principle, that instruments of writing furnish better evidence of the terms agreed upon than can be expected from the frail memory of man. But there is no necessity for the application of the rule, where, as in this instance, the verbal and written contracts agree in every respect. Moreover this parol contract was partly performed, which, of course, took it out of the operation of the statute of frauds, and under it equitable rights were vested, which gave a court of equity power to enforce a specific performance, if it had never been reduced to writing. In the case of *Albert & Wife, vs. Winn & Ross, et al.*, 5 *Md. Rep.*, 66, referred to by the appellees, the promise or agreement was merely a verbal one, without any part performance, and consequently unlike this. Here the verbal contract conferred equitable rights which were binding upon the parties in virtue of the

part performance.  By its terms one of the conditions prece-
dent was, that upon the repayment of the advances Milburn
should receive leases for ninety-eight years.   His right there-
fore to the leases depended upon the performance of this
stipulation.   And without having made the payment, if he
had complied with every other portion of the contract, he
could not have obtained a decree for a specific performance.
His interest in the premises, by virtue of the very contract
which created that interest, was subject and subordinate to
this claim of Mills.   As by the act of 1845 the liens of the
material men can only attach upon the interest of Milburn,
they can only claim to the extent of his rights founded upon
the agreement which gave them existence.   If they had pro-
ceeded to sell the premises under their liens, and had become
purchasers under the sale, they would have acquired just the
same title which Milburn had obtained under the contract,
and nothing more.   The obligation to repay the advances
being one of the conditions upon the performance of which
the leases were to be given, we do not consider this a "mort-
gage, incumbrance or lien," required by the act of 1845 to
be recorded, for the purpose of giving a preference over liens
for work and materials.

In this case we cannot assent to the proposition, that the
material men stand in a position similar to a *bona fide* pur-
chaser for value, without notice.   For Milburn had only an
equitable title.   In fact he had no title upon record when the
buildings were commenced.   On the contrary, even Mills,
under whom he claimed, had no title of record, but nothing
more than an unrecorded equitable interest, as it appears from
the contract of the 18th of August 1849, the ground therein
described was part of the ground demised to Mills by the
president and directors of the Franklin Bank of Baltimore,
for a term of ninety-nine years, renewable forever, by an
indenture or lease, dated the 17th of August 1849.   This
being the condition of Milburn's title or interest in the prem-
ises, the law imposed upon the appellees now claiming liens,
the necessity of making inquiry as to his title; and under the

circumstances they are to be considered as having constructive notice, at least, of the outstanding claim of Mills. *Price & Bevans, vs. McDonald, et al.* 1 *Md. Rep.*, 403, and the authorities there cited.

Believing the court erred in giving preference to the claims for materials furnished, the order overruling the exceptions of the appellant to the auditor's report, and also the order ratifying that report, will be reversed, with costs to the appellant in both courts, and the cause will be remanded for further proceedings.

*Orders reversed and cause remanded.*