28          MARYLAND REPORTS:

Lenderking *vs.* Rosenthal.  Pitcher, *et al. vs.* Same.

(Decided 8th January, 1885.)

PHILIP H. LENDERKING *vs.* JACOB S. ROSENTHAL and REBECCA, his wife.   WILLIAM H. PITCHER, and others *vs.* SAME.

*Contract for a Lease—Specific Performance—Advances for Building houses—Lien upon the Improvements—Mechanics' Lien Claimants—Sale of Property pending an Appeal from the Decree authorizing the Sale—Reversal of Decree—Rights of Purchaser.*

R. being the owner in fee of a parcel of ground in the City of Baltimore, entered into a written contract on the 2nd of July, 1883, to lease the same to H. upon certain specified conditions.  The lease was to be for ninety-nine years, with the right of renewal.  The parcel of ground was to be divided so as to furnish building lots. for eight houses ; and each building lot was to be subject to a certain specified annual ground rent.  In consideration of the agreement to lease, H. obligated himself to proceed at once, upon the execution of the agreement, to improve the ground by the erection of eight houses thereon, according to specifications approved by R.  The houses were to be completed, and made fit for occupation,

on or before the 1st of November, 1883, from which time the ground
rents were to commence to run. And in consideration of this
undertaking and performance on the part of H., it was covenanted
by R. that he would purchase from H. four of the houses to be
erected, so soon as they were completed, according to the plans and
specifications agreed on, for the sum of $6000. R. also agreed to
aid H. in procuring bricks and lumber for the erection of the
buildings, by becoming surety for the payment for such materials,
to the extent of $2000; that amount to be charged against the
amount of the purchase money of $6000, for the four houses; and
the balance of this latter sum R. agreed to advance to H. from time
to time while the houses were in course of erection. It was also
understood and agreed, that the agreement of purchase by R. and
the consequent payment thereunder, were made on the condition
precedent that H. would make said improvements in strict con-
formity to the aforementioned specifications; that the dwellings
should be complete and fit for occupancy at the time agreed upon,
and that the four houses purchased by R. should be delivered to
him free from all liens of mechanics or material men, before any
lease should be executed; and that in the event of any default on
the part of H., all his rights under the agreement should be for-
feited. H. made contracts for labor and materials, and commenced
the erection of the houses under the contract, but being unable to
go on with the work, it was suspended and the buildings remained
in an unfinished state. R. advanced the $6000 under the contract,
while the work was in progress, and H. failing to pay the mechanics
and material men, they filed claims against the property under the
mechanics' lien law. A few days before the expiration of the time
limited by the contract for the completion of the houses, but after
H. had suspended work thereon, R. waiving all claim to forfeiture
under the contract, filed a bill for the sale of the equitable lease-
hold interest of H. in the property, and prayed that the proceeds
of the sale should be applied, first to the payment to R. of the
amount of advances made under the contract, and next to the pay-
ment of other lien holders, according to the priority of their respec-
tive claims. Those claiming liens under the mechanics' lien law,
and who were made parties defendants, claimed to have preference
in order of payment over the claim of R. for his advances, upon
the theory that the contract between R. and H. was a mere build-
ing contract, and consequently the lien claims bound R. as owner
of the property. HELD:

1st. That while the contract between R. and H. had in it some ele-
ments of a building contract, it was a contract for a lease; and if

it had been performed on the part of H., he would have been enti-
tled to a lease of the entire premises, and upon failure of R. to
make the lease, a Court of equity would have decreed specific per-
formance.

2nd. That the money having been advanced under the contract, and
the completion of the houses, according to specification, being one
of the conditions precedent upon which the lease was, or could be
required, to be made, the failure to perform the contract by H. en-
titled R. to a preferred lien or charge upon the improvements upon
the lot for the money advanced, he having waived the right of
absolute forfeiture under the contract.

3rd. That the contract between R. and H. was not required by law
to be recorded, and the contractors for work and materials were
bound to inquire as to the right and conditions upon which H.
held and improved the lot.   They could not affect by their liens
any interest other than that held by H. with whom they dealt.

Where an appeal is taken from a decree for the sale of an equitable
leasehold interest in certain property, and pending the appeal the
property is sold, and the sale ratified by the Court, the rights of
the purchaser will not be affected by the reversal of the decree ap-
pealed from, no appeal bond having been filed by the appellants
to stay the execution of the decree, unless it be shown that there
was unfairness or collusion in making the sale by the trustees.

APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MIL-
LER, ROBINSON, and IRVING, J.

*Louis P. Hennighausen,* and *Richard Hamilton,* for the
appellants.

*Isidor Rayner,* for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

The appellee in this case, being the owner in fee of a
certain piece or parcel of ground in the City of Baltimore,

on the 2nd of July, 1883, entered into a written contract. with James D. Hodge, to make to the latter a lease of the same upon certain specified conditions. The plot of ground was to be divided so as to furnish building lots for eight houses; four to front on Etting street, and four to front on Division street. The lease was to be for ninety-nine years,. with right of renewal in the usual form; and each divisional or building lot was to be subject to a certain specified annual ground rent. In consideration of the agreement to make the lease, Hodge obligated himself to proceed at. once, upon the execution of the agreement, to improve the ground by the erection of the eight houses thereon, according to specifications approved by the appellee. The houses were not only to be commenced at once, but their construction was to continue uninterruptedly until finally completed and made fit for occupation, which was to be on or before the 1st of November, 1883, from which time the ground rents were to commence to run. And in consideration of this undertaking and performance on the part of Hodge, the appellee covenanted that he would purchase from Hodge four of the houses so to be erected, so soon as the same were completed according to the plans and specifications agreed on—two on Etting street, and two on Division street—at and for the aggregate sum of $6000. The four houses so agreed to be purchased are not specifically designated, further than that they were to be two of the four houses fronting on Etting and Division streets respectively. The appellee further agreed to pay the one-half of the cost of grading the entire piece of ground, whatever the cost might be. He also agreed to aid Hodge in procuring bricks and lumber for the erection of the buildings, by becoming surety for the payment for such materials, to the extent of $2000; that amount, however, to be charged against the amount of the purchase money of $6000, for the four houses; and the balance of this latter sum he agreed to advance to.

Hodge from time to time, while the houses were in course of erection.   Then follows this clause :

"It is however understood and agreed between the said Rosenthal and the said Hodge, that the foregoing agreement of purchase by said Rosenthal, and the consequent payment thereunder, *are made on the condition precedent* that the said Hodge will make said improvements; that the same will be made in strict conformity to the hereinbefore mentioned specifications; that the said dwellings will be complete and fit for occupancy at the time aforementioned; and that the four houses purchased by said Rosenthal will be delivered over to him free from all liens of mechanics or material-men, *before any lease shall be executed by him,* or his legal representatives, *or before any demand shall be made for the same;* and furthermore, that in the event of any default on the part of said Hodge, *all his rights hereunder shall be forfeited."*

Hodge had made contracts for labor and materials, and had commenced work on the buildings, before this contract had been actually executed, but not before all the material terms of the contract had been agreed upon by the parties, and with the understanding that the terms thus agreed upon were to be formally embodied in a written contract and signed.   And as a Court of equity would have decreed specific execution after part performance of the agreement, we must therefore look to the contract both in its verbal and written state, in order to determine the rights of the parties thereunder.   *Mills vs. Matthews,* 7 *Md.,* 315.

The bill in this case was filed by the appellee on the 18th of October, 1883, some twelve or thirteen days before the expiration of the time limited by the contract for the completion of the houses; but at that time Hodge had suspended work on the buildings, and they remained, and still remain, in an unfinished state, requiring considerable work and materials to put them in a state of completion;

and it seems to be conceded that Hodge was unable to go on with the work. The appellee had advanced the $6000 under the contract, while the work was in progress; and Hodge failing to pay the mechanics and material-men, they filed claims against the property, under the mechanics' lien law, and thus the question of preference is presented.

All claim to forfeiture under the contract is waived by the appellee; and he has filed the bill for the sale of the property, that is, the equitable leasehold interest therein of Hodge, for the payment of the advances made, as a pre-ferred lien or charge thereon; and he has made those claiming liens under the mechanics' lien law parties. These latter parties have filed their claims upon the theory that the contract between the appellee and Hodge was, in substance and reality, a mere building contract, and, consequently, that such lien claims bind the interest of the appellee as owner of the property, and therefore have preference in order of payment over the claim of the ap-pellee for advances made under the contract. The bill prays for the sale of the equitable leasehold interest of Hodge, and that the proceeds of sale be applied, first, to the payment to the appellee of the amount of advances made under the contract; and, next, to the payment of other lien holders, according to the priority of their re-spective claims. And it was in accordance with this prayer that the Court below decreed.

The contract certainly has in it some of the elements of a building contract, and it may, possibly, be used as a shield against liens; but, at the same time, it is equally certain that it is a contract for a lease. If it had been performed on the part of Hodge he would have been enti-tled to a lease of the entire premises, and upon failure of the appellee to make the lease, a Court of equity would, without hesitation, have decreed specific performance. And that being so, it would seem to be impossible, upon

3                    v. 63.

principle, to distinguish this case from that of *Mills vs. Matthews,* 7 *Md.*, 315. Section 9 of Article 61 of the Code provides, that where a building is erected by a lessee or tenant for life or years, the lien shall *only* apply to the extent of the interest of such lessee or tenant. In construing this provision of the lien law, it was held, in the case just referred to, that where a contract had been made for a future sub-lease, with stipulation on the part of the party to make such sub-lease that he would advance a certain amount to aid in the erection of the houses on the lot, the liens of material-men could only attach upon the interest of the party contracting to erect the improvements and to accept the sub-lease upon the completion of the buildings; that such liens could only affect the rights of the equitable sub-lessee founded upon the agreement which gave them existence. In that case the party to become the sub-lessee covenanted that the houses to be constructed should be finished, and that he would repay the money advanced and all interest thereon, on or before a certain day; and in case of default the right of re-entry was reserved to the lessor. But upon the completion of the houses and the repayment of the advances, the sub-lease was to be made and not until then. The party contracting to make the sub-lease made the advances according to contract, and they were not repaid to him; and claims for materials furnished were also left unpaid. In that state of case the property was sold under a decree, and the proceeds of sale not being sufficient to repay the advances made under the contract and the claims of the material-men, a question of preference arose between the parties thus claiming. And, in disposing of that question, it was held that as the repayment of the advances was one of the conditions upon which the sub-lease was to be given, and as the sub-lessee had no title except under the agreement, and the material-men being bound to enquire as to the title, they should be regarded as having con-

structive notice of the outstanding claim of the sub-lessor for his advances, and that his claim was entitled to a preference over theirs acquired under the mechanics lien law. The same principle has been recently adopted by this Court in the case of *Gable & Beacham vs. The Fund Society,* 59 *Md.*, 455.

In this case, if the stipulation had been for the repayment of the $6000 advanced, instead of the covenant to complete and deliver free of liens four of the eight houses, there could be no question but that the case would be concluded by that of *Mills vs. Matthews.* But we think there is no substantial difference in the cases. Instead of requiring repayment of the money advanced, the appellee covenanted to accept, by way of purchase, four of the houses to be built, at a valuation; and this was only another mode of being repaid the money advanced. The money having been advanced under the contract, and the completion of the houses according to specification being one of the conditions precedent upon which the lease was, or could be required, to be made, the failure to perform the contract by Hodge entitled the appellee to a preferred lien or charge upon the improvements upon the lot, for the money advanced, he having waived the right of absolute forfeiture under the contract. The contract between the appellee and Hodge was not required by law to be recorded, and the contractors for work and materials were bound to enquire as to the right and conditions upon which Hodge held and improved the lot. They could not affect by their liens any interest other than that held by Hodge with whom they dealt.

The decree in this case, however, must be reversed. The record discloses the fact, that the appellee, on the 5th of October, 1883, executed a mortgage of this same parcel of ground, with all the improvements thereon, not of the mere reversion therein subject to any leasehold estate or interest, but of the entire estate in possession, to W. A.

Fisher for $7000 borrowed money.  It does not appear that this mortgage debt has ever been paid, or that the mortgage has been released; nor is the mortgagee made a party to this proceeding.  The decree directs the property to be sold, and that the trustees (denominated in the decree receivers, but for what reason does not appear,) shall join the appellee and his wife in the execution of separate leases to the purchasers of the leasehold interest of Hodge in the property directed to be sold, subject to the ground rents reserved.  The legal effect of this would be, of course, that the property would be sold subject to the mortgage thereon.  Now to sell this property under such a condition of the title would most likely, if not certainly, effect a sacrifice of it, and consequently preclude the possibility of the claimants under the mechanics' lien law receiving anything on their claims.  This should not be allowed.  The appellee has created this incumbrance upon the property himself, and apparently without any regard or respect to the rights of those who might claim under the contract with Hodge; and that incumbrance should not be allowed to become an impediment to a fair sale, and be the means of defeating the prospect of a full price for the property, for the benefit of all concerned. The mortgage therefore must be paid off, or it must be released as to the interest to be affected by the decree, before a sale should be decreed, upon the application of the appellee.

*Decree reversed, and*
*cause remanded.*

(Decided 8th January, 1885.)

---

On the motion of the appellees for a modification of the decree of reversal in this case, ALVEY, C. J., delivered the opinion of the Court.

Immediately after the foregoing opinion was filed, a motion was made for a modification of the decree of

reversal, upon the suggestion that the property, the subject-matter of the decree appealed from, had, subsequently to the appeal taken, been sold at public auction by the trustees, and that such sale had been reported to and ratified by the Court below. It is stated on the part of the appellee, Rosenthal, as one of the reasons for the motion made by him, that such sale was made with the assent of the appellants, through their solicitors, and that it was announced at the sale, that the property was offered, and would be sold, free of all incumbrances thereon, including the mortgage to W. A. Fisher for $7000, though the decree authorized no such terms, and could not affect the charge created by the mortgage, which was not then due. The advertisement of sale makes no reference to the mortgage, nor does it notify the public that the property would be sold, or offered for sale, free of all incumbrances, except the ground rents. The sale was ratified on the 9th of Sept., 1884, and the order of ratification makes no reference to the mortgage, and the latter was not paid off and released until the 11th of December, 1884, after the appeal had been argued in this Court. It is alleged that the purchase money has been paid and is now in Court, awaiting distribution.

All these proceedings, as it now appears, took place after the taking of the appeal to this Court, and, consequently, the transcript of the record, sent up on the appeal, made no disclosure in regard to such proceedings.

The appellants have filed an answer to the application thus made for modification of the decree, and resist the granting of the same, and, in their answer, they deny that the sale was made with their consent, or with the consent of their solicitors. And they allege that, understanding that the property would necessarily be sold subject to the outstanding mortgage, all of them, except one, refrained from attending the sale; and they further charge, that the appellee, who was acting as one of the receivers or

trustees in making the sale, purchased the property himself in the name of his brother. It is manifest, therefore, upon the allegations thus made by the respective parties, that questions for the exercise of original jurisdiction are presented, which this Court, as an appellate tribunal, cannot hear and decide. Such questions must be presented to and be passed upon by the Court below, having cognizance of the proceedings. In the manner in which they are presented here, we can express no opinion in regard to them, not being embraced in the appeal which we have decided.

It has been suggested that the decree might be modified and the cause remanded, under the provision of the Code, Art. 5, sec. 28, without reversing or affirming the decree appealed from. But it is exceedingly questionable whether this is such a case as is contemplated by that section of the Code. And, moreover, if that course were pursued, the parties would be in no better situation in respect to the sale that has been made than they now occupy; for the cause would then stand in the Court below, not only "as if no appeal had been taken in the cause," but as if "the decree or order appealed from had not been passed." The case has been decided upon the record as presented on the appeal, and there is nothing shown on the present application that renders it proper that the decree should be changed. It is proper, however, for us to say, that as there was no appeal bond filed by the appellants to stay the execution of the decree appealed from, unless it be shown that there was unfairness or collusion in the making the sale by the trustees, the rights of the purchaser will not at all be affected by the reversal of the decree. *Wampler vs. Wolfinger,* 13 *Md.,* 337, 348. The motion therefore to modify the decree of this Court must be overruled.

*Motion overruled, and*
*petition dismissed.*

(Decided February 6th, 1885.)