# JOHN J. HOFFMAN vs. CHARLES C. McCOLGAN.

*Mechanics' Lien—Estate of Lessor not Liable for Improvements made by Lessee.*

Where the contract for materials to be used in the construction of houses was made with the lessee of the land, the estate of the lessor is not subject to a mechanics' lien therefor.

Defendant, the owner of a number of lots of unimproved ground, leased the same to C. for 99 years, reserving a rent of six dollars per front foot. On the same day, the defendant and C. made a contract by which C. agreed to erect houses on the lots and the defendant agreed to pay to C. the sum of $500 on each house as a bonus, and also to lend to C., or procure to be loaned, the sum of $700 on each house. C. then procured bricks for the structure on credit from the plaintiff, telling him that payment would be made with money to be advanced by the defendant. Before completion of the houses C. became insolvent, and abandoned the work. Plaintiff filed a mechanics' lien for the materials supplied by him, and a bill in equity to enforce the same against the reversionary interest of the defendant. *Held*, that under Code, Art. 63, sec. 9, the reversionary estate of the defendant was not subject to the mechanics' lien.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (WICKES, J.), dismissing the bill of complaint. The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, PAGE, ROBERTS and BOYD, JJ.

*William L. Marbury* and *H. Snowden Marshall*, for the appellant.

Very briefly, the plaintiff's contention, is that McColgan, when he made with Clarke this contract for the improvement of his property, thereby rendered his interest in the property liable to the liens of mechanics, from whom Clarke purchased materials to carry out this contract; and that this is not at all affected by the fact that McColgan's contract for improvement of his property was made with a

lessee of that very property.   Stated differently, the plain-·
tiff contends that the mechanics' lien law applies as fully
when an owner employs his lessee to improve his property,
as when the owner employs any other builder to improve
his property.   There are two thoroughly established prin-
ciples of the mechanics' lien law, the apparent conflict of
which is the only source of difficulty in this case.   The first
of these is the fundamental principle of the mechanics' lien
law, imposing a lien upon the estate of any owner's real
property, who contracts for the improvement of that prop-
erty, whether his contract be directly with the mechanic, or
indirectly through a middleman.   The second of the two
principles is that declared in section nine of Article 63 of
the Code:   That where a building shall be erected by a
lessee, the lien shall only apply to the interest of that lessee.
On the one hand, McColgan has certainly so contracted
with Clarke for the erection of improvements, as to give a
lien against his, McColgan's estate to mechanics furnishing
materials to Clarke ; on the other hand, Clarke, who erected
these buildings under this contract with McColgan, *is* a
lessee of the property, and this *is* a case where a building is
erected by a lessee.   That is to say, Clarke is both a con-
tractor for building, in which capacity he can impose a lien
of McColgan's estate, and a lessee of the property, in which
capacity he cannot impose such a lien ; in which capacity
is he to be treated in this case, involving as it does, the
rights of others, entire strangers to these dealings between
the lessor and lessee?

Upon the principle of mechanics' lien legislation, Hoff-
man claims a lien against McColgan's property.   He asks
in effect to be allowed to retain the ownership of his bricks
until paid for them by Clarke, or Clarke's employer, Mc-
Colgan.   He denies McColgan's right to have his property
improved by those materials, upon the payment merely of
that sum agreed upon between McColgan and Clarke.   By
the law of fixtures, those bricks and those lots are now one
inseparable piece of property; but by the mechanics' lien

law, the owner of the bricks is part owner of that insepa-
rable piece of property, to the extent that he has contrib-
uted to its increased value.   By reason of the requirement
of privity of contract, Hoffman cannot sue McColgan for
the price of these bricks; but by the mechanics' lien law,
the statutory obligation is imposed on McColgan to pay for
them if he wants to derive a benefit from them to his
property.

Making this claim, Hoffman finds it denied, because, it is
said, another principle of law comes in and bars his right ;
that is, the principle that, when a lessee erects improve-
ments, the lessor's estate is not subject to liens imposed
thereby.   This makes it necessary to carefully examine this
other principle.   The owner of an estate in property, in
possession of the property, with full and exclusive powers
to contract for buildings to be erected on the property, has
no power to impose a lien on the estates in the same prop-
erty owned by others not in possession, and not entitled to
be in possession of the property.   The party in possession
is supposed to be contracting with reference to his own
estate, and can bind that alone with liens.   The immediate
possessor has full power to contract; therefore, he and his
estate must accept the full responsibility of the contract.
The subsequent possessor has no power to contract; there-
fore, by no reasonable law can he or his estate be bound by
the consequences of the contract.   See *Beehler* v. *Ijams*, 72
Md. 197 ; *Leiby* v. *Wilson*, 40 Pa. St. 67 ; *Hill* v. *Gill*, 40
Minn. 44.

One contracting for the improvement of his property,
binds with a lien his estate in that property, be that estate a
fee, a reversion, a remainder, or even an equitable vendor's
or lessor's estate.   "Calling the contractors tenants will not
avoid the ordinary incidents of a building contract.   If it
would, then might the owner escape the provisions of the
mechanics' lien."   BUTLER, P. J., in *Hall* v. *Parker*, 94 Pa.
111.   And see *Henderson* v. *Connelly*, 123 Ill.; *Hayes* v.

*Fessenden,* 106 Mass. 228; *Lumber Co.* v. *Mosher,* (Wis.) 60 N. W. Rep. 264.

*James McColgan,* for the appellee.

The appellee contends that this case is directly within the very language of the Code, Article 63, section 9, which provides that "where a building shall be erected by the lessee or tenant for life or years, of a farm or lot of ground, or by an architect, builder or other person employed by such lessee or tenant, the lien shall only apply to the extent of the interest of such lessee or tenant." It is impossible to conceive a case falling more directly within the provisions of this law, or more clearly within its scope and intention. This Court has held in a series of cases, commencing in 7th Md. down to the present time, not only that cases falling directly within the language of the law were covered by it, but that cases which might for some reason or another be supposed to be without the scope and intention of the law, were also covered by this provision. *Beehler* v. *Ijams,* 72 Md. 195; *Lenderking* v. *Rosenthal,* 63 Md. 28, 34; *Gable & Beacham* v. *Preachers' Fund Society,* 59 Md. 458; *Mills* v. *Mayhew,* 7 Md. 321. This appears to be the first time that anyone has undertaken to ask this Court to repeal this law, which the maintenance of the appellant's contention would necessarily do.

ROBERTS, J., delivered the opinion of the Court.

The appeal in this case is taken from a decree of the Circuit Court No. 2, of Baltimore City. The material facts are, that on April 3d, 1894, the appellee executed a ninety-nine years' lease, in the usual form, to a certain Thomas F. B. Clarke. The consideration therein was stated to be one dollar, and the rent reserved was at the rate of six dollars per front foot. The lease was recorded on the day of its execution, and shortly thereafter, on the same day, the appellee and said Clark entered into an agreement, by the terms of which Clark was to build certain houses upon the leased premises, according to the specifications in said agree-

ment particularly set forth.   By the terms of said agree-
ment, the appellee promised to pay to said Clark, *"as a
bonus and not as a loan,"* the sum of $500.00 upon each of
said houses, during the progress of the work, in seven
equal instalments, and upon the completion of said houses
by said Clark, the appellee covenanted to deliver to said
Clarke a full release for all ground-rent due and payable to
the first of October, 1894.   It was further stipulated therein,
that upon the completion of said houses in all respects, ac-
cording to the requirements of said agreement, and within
ninety days thereafter, and upon thirty days' notice from
said Clarke, the appellee would loan, or procure to be
loaned to said Clarke, the sum of seven hundred dollars
upon each of said lots so improved; provided said lots
should be clear of all lien claims, charges and incumbrances,
other than the ground-rent reserved thereon.   Shortly after
the date of said agreement, Clarke commenced the erection
of the buildings mentioned therein, and on May 26th, 1894,
informed the appellant of the terms of his lease from the
appellee, which was then on record, and thereupon he
agreed in writing with the appellant to purchase from him
a large lot of bricks, which were delivered by the appellant,
and used in the erection of said buildings.   In the course
of construction of said houses, the appellee was, by the
terms of his agreement with Clarke, required to make cer-
tain payments to him, which he accordingly did.   Clarke
becoming financially embarrassed, discontinued work on the
buildings when the appellant filed his lien, for the purpose
of subjecting the reversion of the appellee in said lots to
the payment of his claims.   So that the question, which we
are now called upon to determine, is whether the appellee's
reversion in said leased premises can be subjected to the
payment of the claim of the appellant for the brick fur-
nished by him and used in the construction of said buildings.
It is, we think, very clear that the appellee had no knowl-
edge of the financial condition of Clarke at the time he
contracted with him for the erection of the houses; and

that before making said contract, he made such inquiries as were well calculated to favorably impress him with his ability to execute his contract.    The appellant's own testimony shows that he knew from Clarke the nature of his contract with the appellee, and it was his duty, before delivering the bricks, to have satisfied himself as to the state of Clarke's title to the lots built upon.    Certainly he was not misled by any act or representation of the appellee, with whom he had no intercourse whatever.    Although the bill charges bad faith, arising out of the alleged fact that the rent reserved by the appellee wholly disproportioned to the value of the property, we fail to discover in the record anything justly tending to sustain any such contention.    In this State little difficulty ought to be experienced in the determination of the question arising on this appeal.    Section nine of Article sixty-three of the Code provides that "where a building shall be erected by a lessee or tenant for life, or years, of a farm or lot of ground, or by an architect, builder or other persons employed by such lessee or tenant, the lien shall only apply to the extent of the interest of such lessee or tenant."    This provision of law has been frequently before this Court for construction, and its plain manifest meaning has been uniformly maintained.    When a statute of this State has been passed upon by this Court, and received careful consideration and definite determination, as is the case here, it seems to us to be a fruitless effort to go out of the State to find how far other Courts may have differed with us as to the meaning of one of our statutes.    We shall now make brief reference to some of the cases which we consider decisive on the question before us.

The first time this Court was called upon to consider the provision of the Code hereinbefore quoted, which is taken *in totidem verbis* from the 7th section of the Act of 1845, ch. 257, was in the case of *Mills* v. *Matthews*, 7 Md. 322.    In that case Mills and Milburn entered into a written contract under seal, which was recorded the same day, and therein the former agreed to sub-lease to the latter, for ninety-eight

years, renewable forever, a lot of ground in the city of Balti-
more; Milburn agreeing to erect on the lot, at his own cost
and expense, five brick dwelling houses, and Mills contract-
ing to advance, as a loan to Milburn to aid him in the erec-
tion of the houses, the sum of $300 on each house.   Milburn
covenanted that the houses should be finished and that he
would repay the money advanced and all interest thereon
on or before the 1st of January, 1853.   Milburn contracted
for the materials. ·  The money was loaned as stipulated, and
upon the failure of Milburn to complete the houses and
comply with his contract, the property being sold, the ques-
tion arose between Mills, who claimed to recover the advances
made, and the material-men.   This Court said, " as by the
Act of 1845, the liens of the material-men can only attach
upon the interest of Milburn, they can only claim to the
extent of his rights founded upon the agreement which
gave them existence."   The Court further said in that case,
that the liens of the material-men could only attach to the
interest of Milburn.   Then followed the cases of *Gable* v.
*The Preachers' Fund Society*, 59 Md. 456; *Lenderking* v.
*Rosenthal*, 63 Md. 34, and *Beehler* v. *Ijams*, 72 Md. 195, in
all of which cases the doctrine as announced by this Court
in *Mills* v. *Matthews*, *supra*, is sanctioned and affirmed.   After
careful examination of the doctrines announced·by the Courts
of other States, we have, on a state of facts such as the
record in this case presents, found very few decisions at
variance with the views herein expressed.   Mr. Phillips, in
his work on Mechanics' Liens, §§ 89, 90, in concluding a
thorough examination of this subject, says: " It may there-
fore be asserted, unless the law-making power expressly or
by necessary implication enact otherwise, that a lessee cannot,
without the consent of the. lessor, bind the reversion to
answer for the improvement or repairs which he may erect
upon the premises."   It may be that loss and ·hardship have
followed the appellant's venture, but this is not such a case
as Courts can relieve against, for the reason that it would
never have been possible that loss could have come to the

appellant if he had exercised, in some reasonable degree, proper caution and prudence. But this he did not do, and has only himself to blame for his misfortune. The views herein expressed are in exact concurrence with those of the learned Judge who decided the case below, and we therefore affirm the decree.

*Decree affirmed with costs.*