## WILLIAM K. VANDERBILT
v.
## CHARLES B. WILLIAMS.

*Mechanics' Liens—Leasehold Interest.*

1. A mechanic employed by a lessee to repair a given building, may in view of the intended cancellation of the lease by the lessor for the non-payment of rent, pay the rent, assume the burden of the lease, and assert a mechanic's lien upon the leasehold interest of the lessee for the improvements made by him.

2. A party is not entitled to a mechanic's lien upon the fee of premises to secure his pay for improvements made thereon at the instance of a tenant having a lease for years.

[Opinion filed March 13, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. WILLIAM ELMORE FOSTER and ROBERT MATHER, for appellant.

Vanderbilt v. Williams.

Messrs. ABBOTT, OLIVER & SHOWALTER, for appellee.

WATERMAN, J.    The bill in this case alleged that appellant, by his agent, Pliny B. Smith, on the 6th day of July, 1889, leased to Lewis Bartels, James Crelly and Florence E. Suits, the premises known as Nos. 300 and 302 South Clark street, Chicago, for the term of five years, at a monthly rental of $250; that the premises were then in a ruinous condition, unfit and useless for occupancy; that Bartels on the 2d day of August, 1889, made a written contract with complainant (appellee), whereby complainant agreed to finish and complete certain work upon said building by September 1, 1890, according to plans and specifications prepared by one Oscar Cobb, for the sum of $3,800 ; that he did extra work, ordered, to the amount of $996, and completed the entire work by September 13th, the extra work prolonging the completion of the entire contract from the 1st to the 13th of September; that on the 10th day of September, he learned that Bartels, Crelly and Suits had not paid the second installment of rent, and it was doubtful if they could raise the money to pay for work or to convert the building into a theater as they had contemplated; that on said last mentioned day he had an interview with Smith, who gave him to understand that the old lease would be canceled and a new lease given to him upon the terms of the old lease, and that in any event he would get his pay for the work done by him on the building; that relying on what Smith told him, he went on and finished his work on the 13th day of September; that on the 14th, Smith informed him he had canceled the lease and that he, complainant, must look to Bartels for his pay; that his work has added to the value of the building the sum of $4,796; that Bartels is irresponsible, and unless complainant can, under the general doctrine of equity, hold the building or its owner liable to pay for the work he has done, he will be defrauded out of his pay; therefore prays that his equitable lien upon the building may be established.

The principal question of fact in dispute is as to what occurred between Smith and appellee on the 10th of Septem-

ber. Upon the hearing appellee testified that he saw Smith on the 10th; that Mr. Cobb asked Smith if he canceled the lease to let him, appellee, have it. That Mr. Smith said that he would have to cancel that lease before he made any promises; that he, appellee, told Smith if he could get the lease, he could get plenty of money to finish it and make a theater out of it the same as anybody.

The question being put to him, if he asked Smith for a lease, he replied: "Well, I don't know as I asked him any more about that because he had said that he would have to cancel the other one first, and then he would see about making one out to me or some one else."

Smith testifies that neither Cobb nor Williams made any definite proposition at this conversation, and that he made no promise that Williams should have a lease; that he has no recollection that Cobb asked him (Smith) if he canceled the lease to make one out to Williams, and thinks Cobb did not say so, although he will not swear that he did not so request.

Taking appellee's version of this interview to be the true one, it amounts to simply this: that appellee asked Smith if he canceled the lease, to then let the premises to him, and that Smith refused to make any promises.

What were appellee's rights at this time?

He undoubtedly had an equitable right to pay up the back rent, assume the burden of the lease and assert a mechanic's lien upon the leasehold interest of Bartels for the improvements he, appellee, had put thereon. If he had then tendered the back rent to Smith, the lease could not have been canceled. He had also the right to refuse to do any more work on the premises unless Smith agreed to whatever he, appellee, made a condition of going on with the work. All that he can have lost by what was done at the interview, is the advantage, if any, of availing himself of the right to do one or both of these things.

If he lost anything by reason of any trust or confidence he put in what Smith then said, or any hopes raised by Smith's demeanor, the decree in this cause not merely restores him to the condition in which he then was, but gives to him what he

then neither had nor claimed, viz., a lien upon the fee of the land for the full amount of the amount owed to him by Bartels, instead of a lien upon the leasehold interest of Bartels, subject of course to all the payments and conditions of the lease. It does not appear that any considerable amount of work was done after the 10th.

Appellee seems, at the interview with Smith on the 10th, to have fully understood that Smith made no promises; if appellee meant then to secure any rights, he should have tendered to Smith the back rent; this would have prevented a forfeiture of the lease, but would not have assured to appellee anything beyond an opportunity to maintain his mechanic's lien.

It is questionable, not only whether the leasehold interest had, on the 10th, any considerable value, but if the improvements made by appellee really added anything to the value of the premises; it is unnecessary to discuss the evidence upon this branch of the case, as in the view we take, no ground is shown for the assertion and enforcement of an equitable lien.

The decree of the court below is reversed, with directions to dismiss the bill.

*Reversed and remanded with directions.*