## Roland A. Crandall et al. v. Paul J. Sorg.

1.  LANDLORD AND TENANT—*Restrictions on the Lessee.*—A restriction upon the lessee in a lease providing that no transfer, assignment, mortgage, judgment, mechanic's or other lien, shall in any manner or degree affect the claim of the lessor in said premises or his rights therein under the provisions of the lease, is not unreasonable and is such as a court of law will enforce in a proper case.

2.  FORFEITURES—*Failure of a Lessee to Pay Rent and Taxes.*—When a lessee fails to pay rent and taxes pursuant to the covenants of his lease, such failure creates a cause for a forfeiture of his rights, and the lessor may declare such a forfeiture. and the holder of a lien must pay all arrears of rent before he can acquire the rights of the lessee under the lease.

3.  SAME—*He Who Comes into Equity Must Do Equity.*—When a lessor makes a declaration of forfeiture and enters into possession of demised premises under it, and then appeals to a court of equity to establish him in what he may have reason to fear he has not obtained by such declaration of forfeiture, the maxim that he who appeals to a court of equity for relief must be ready to do equity, applies.

4.  SAME—*Forfeitures in Courts of Equity.*—A court of equity will not lend its aid to enforce a forfeiture on a breach of a condition subsequent in a deed, and it will make no difference in such a case that its aid is sought upon the special ground of removing a cloud upon the title of real estate.

5.  COURTS OF EQUITY—*When a Court of Equity Will Not Enforce a Penalty.*—A court of equity will not enforce a penalty or compel a discovery which will expose a party to a penalty or forfeiture.

**Bill to Quiet a Title.**—Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding.  Heard in the Branch Appellate Court at the March term, 1901.  Reversed and remanded with directions.  Opinion filed December 24, 1901.

A. N. and E. P. EASTMAN, attorneys for appellants.

H. H. C. Miller and W. S. Oppenheim, attorneys for appellee.

Mr. Justice Waterman delivered the opinion of the court.

This was a bill filed June 20, 1894, by appellee, to quiet title.

Many persons were made parties thereto. Answers, cross-bills and replications having been filed the cause was referred to a master to take testimony and report.

The master found that in the year 1891 George W. Henry and James H. Campbell were the owners of the property in question, situated at the northwest corner of State and Thirty-fourth streets, in the city of Chicago, comprising about two acres. That Henry and Campbell made a conveyance of the property to one Hullinger. Hullinger conveyed the property to the complainant, Sorg, and received from him a lease for ninety-nine years; that before the land was sold to complainant a contract was entered into by which Sorg was to pay $200,000 for the land and to give Hullinger a ninety-nine year lease at a rental of $12,000 per annum, payable quarterly.

The master's report states that by this contract the lessee or his assigns were to construct a building on the leasehold premises to cost not less than $300,000 and that of the $200,000 purchase money, $100,000 was to be deposited in bank and paid out—$25,000 when $50,000 had been expended on the contractor's receipt shown therefor; $25,000 more when the fourth floor joists were laid, provided the contractor's receipts were shown therefor; and when the building was ready for occupancy the balance, $50,000, was to be paid; that before any part of the $100,000 should be withdrawn, a statement should be made by the architects of the building to Sorg or his representative, Frank H. Ray, showing the amount that had been invested in the building and that all the conditions of the contract had been complied with and the contractor's receipt presented, showing that all the labor and material had been paid for, upon which Ray was to give his consent to the withdrawal of the deposit as aforesaid.

The contract itself is not that Hullinger, the lessee, or his assigns, were to construct a building, but that Hullinger would construct a building upon the premises costing not less than $300,000.

The master further reports that June 16th Hullinger conveyed the property to Sorg, who, on the same day, executed to him a ninety-nine year lease and paid him $100,000 as provided, and deposited another $100,000 in bank subject to the conditions of the contract.

The master further reports that thereafter, Henry and Montgomery organized a corporation, known as the Mecca Company; that September 5th the aforesaid lease was assigned to the Mecca Company and the consent of Sorg given to such assignment. The lease was recorded upon the day of its date, June 16, 1891, in the recorder's office of Cook county. Nearly three months after the recording of this lease, a contract was entered into between the Mecca Company and Shields & Cook to construct a building on the premises, according to the plans and specifications, for $420,000. This contract was made September 6th. October 23d, so much work had been done that the architects issued their certificates for $50,000 and Shields & Cook gave their receipt to the Mecca Company for that sum; on the 24th of October the written consent of Ray, the agent of Sorg, was obtained for the withdrawal of $25,000 of the money which had been deposited in the Columbia National Bank. December 22, 1891, another certificate was issued by the architects for $50,000 and Shields & Cook gave receipts for $50,000, and thereupon, by the consent of Ray, $25,000 more of the $100,000 was withdrawn, and finally the remainder of the $100,000 was under like circumstances withdrawn.

August 23, 1892, the building was turned over by the contractors, Shields & Cook, to the Mecca Company, who accepted the same. The Mecca Company gave a trust deed of the property to secure the payment of certain bonds issued by it, about $100,000 of which were taken and held by the Columbia National Bank at the time of its fail-

ure.  On the 23d of May, 1893, one Niblack was appointed receiver for the Columbia National Bank, and on the 7th of July the property in question was deeded by the Mecca Company to him.  The bank then held 116 of the bonds of the Mecca Company secured upon this property, each bond being for the sum of $1,000.  There was then due to the complainant, Sorg, installments of rent to the amount of $9,000.  The property had been sold for taxes in April, 1893.  Niblack refused to pay either rent or taxes, and on the 17th of May, 1894, notice was served upon him, and at about the same time upon appellants, that unless within thirty days the rent due on the premises and the delinquent and unpaid taxes were paid in accordance with the terms of the lease made by Sorg to Hullinger, he (Sorg) would, in pursuance of the terms of the lease, declare the term provided for in the lease ended and determined.

Thereafter, on May 17, 1894, no part of the past due rent or taxes having been paid, Sorg declared the lease forfeited and determined, and all right, title and interest to or held by any person therein annulled and at an end.

The master finds that Sorg paid out $15,000 to redeem from tax sales, and that since he has taken possession of the property he has paid out $37,000 in the improvement thereof.  The lease given by Sorg to Hullinger contained the following:

"It is further agreed, and notice is hereby given, that no transfer, assignment, mortgage, judgment, mechanics' or other lien shall in any manner or degree affect the claim of the lessor in said buildings, and his rights in said premises under the various provisions of this lease."

The master further finds that the premises were purchased by Sorg under the belief that they were worth about $180,000 without a lease, and that with a lease they were worth, at least, the sum of $200,000, and that the $100,000 deposited as aforesaid in bank, was the money of the said Henry, and that Sorg had no interest whatever therein; that $100,000 of the purchase price paid by Sorg was to be placed in the Columbia National Bank to be paid out when certain conditions were fulfilled, and that his

sole relation to the Mecca Company after the assignment
of the lease to it, was that of landlord; that he was in no
way interested in the building as part owner; that the
lease was placed of record before any contract for improv-
ing the premises was entered into, and that he had no
interest whatever in the leasehold estate; that all the
defendants must·be considered as having, at least, con-
structive notice of the provisions in the lease against
mechanics' liens and the rights of the lessor in the prop-
erty. The master thereupon found as follows:

"I am therefore of the opinion and find after carefully
considering the evidence in the said cause that the lessee
and his assigns have lost all right, title or interest in and
to the said premises, by reason of the forfeiture of said
lease, and that none of the mechanics' lien claims of any of
the defendants in this cause can be sustained."

The chancellor approved and confirmed the master's
report as to the mechanics' liens claimed by appellants and
entered a decree in accordance with the said report.

In the case of Franklin Savings Bank v. Taylor, 131 Ill.
376, the court in passing upon the following clause in a
trust deed—" provided that no charge, lien or incumbrance
on said premises or any portion thereof shall be thereby
created by said Ira Scott or his successors in trust," (the
record of the trust deed having been destroyed,) said
(p. 386):

"If that record had never been destroyed no one would
claim that a mechanic's.lien could have been established
against the property, and this simply because the deed
expressly provides that no work creating a lien shall be
made."

The restriction is not unreasonable and it is such as the
law will enforce.

Counsel for appellant urge that the case of Franklin
Savings Bank v. Taylor is not applicable here because of
the contract made by Sorg with Hullinger, under which
Hullinger was to erect upon the leasehold premises a build-
ing costing not less than $300,000. The lease and the con-
tract were undoubtedly one transaction, and the position of

Sorg to the leasehold premises is to be determined by a consideration of both instruments. The case of Franklin Savings Bank v. Taylor grew out of the case of Taylor et al. v. Gilsdorff et al., 74 Ill. 354, a petition for a mechanic's lien in which it appeared that on the 15th of June, 1871, Maria L. Taylor, wife of Frank C. Taylor, being seized in fee of lot 4, in block 16, in Bushnell's addition to Chicago, conveyed the same to Ira Scott, as trustee. This deed vested the estate in the trustee in trust for Mrs. Taylor during the joint lives of herself and husband with remainder over to the heirs or devisees of the husband, and to the husband himself, if he survived the wife and their children. Frank C. Taylor, as by the terms of the trust deed he and his wife with the approval of the trustee might, made in his own name, with the several petitioners, contracts for the improvement of the lot by the erection of a block of houses. This was done while Scott was trustee; he having resigned, one Milliken was appointed in his place. Milliken, as trustee, mortgaged part of the premises to one Howe to secure the payment of certain sums of money to the Franklin Savings Bank. The Supreme Court found (page 359) that Mrs. Taylor knew and approved of the contracts of improvement made by her husband, and that she was to be considered as a party to the contracts; and sustained the petition of Gilsdorff and others for a mechanic's lien.

In Franklin Savings Bank v. Taylor, 131 Ill. 376, it appears that in the proceedings for mechanics' liens no jurisdiction was acquired over the persons of the children of Maria L. Taylor and Frank C. Taylor who were made parties thereto; that on the 19th of March, 1875, the Franklin Savings Bank paid the amount due under the decree awarded to Gilsdorff and others, affirmed in 74 Ill. 354, and took an assignment of the decree; that on the 13th of January, 1873, Maria L. Taylor and Frank C. Taylor, her husband, filed their petition in the Superior Court of Cook County, setting forth the destruction by fire of the original trust deed to Ira Scott and the record of the same, and

praying that it be restored; that the children of Maria L. Taylor and Frank C. Taylor, the Franklin Savings Bank, Ira Scott and Francis B. Peabody, who had been appointed successor in trust, were made defendants; that a decree was entered on the 19th of March, 1893, restoring the record of the trust deed as prayed; that on the 26th of June, 1878, the Franklin Savings Bank filed its bill to foreclose the mortgages executed to it by Maria L. Taylor and Frank C. Taylor, and Milliken, as trustee; that before any decree of foreclosure was entered in that case, viz., on the 26th of April, 1878, a bill for review of the decree restoring the record of the trust deed was filed in the Superior Court of Cook County, alleging that the original trust deed had been found and that it was materially different from the record thereof as restored; that all persons who were parties to the bill restoring the trust deed were made parties to the bill of review, and it was decreed that the decree restoring the record of the trust deed be set aside and the bill therefor dismissed; that the decree provided that nothing therein should deprive the Franklin Savings Bank or the trustee acting under the restored record, of any rights they might have in the property conveyed in trust. Subsequently a decree of foreclosure was entered foreclosing the mortgages of the Franklin Savings Bank. The mortgaged property was bought by the bank and certificates of purchase were issued for it. Afterward, the bank caused sales to be made under the mechanics' lien decree in the case of Gilsdorff et al. v. Taylor et al., and lot 4 hereinbefore mentioned, which by a subdivision had become sublot 3, was at such sale struck off to the bank for $12,537.92.

It was under a bill to quiet title in respect to the title of the Franklin Savings Bank obtained as aforesaid under a sale made by virtue of a decree in a mechanic's lien proceeding, in which Maria L. Taylor, the owner of the property, was held to have been, as such owner, a party contracting for the improvement of the premises, that the Supreme Court held, (131 Ill. 376) that by virtue of the clause in the trust deed against liens, hereinbefore mentioned, no mechanic's lien could attach.

Crandall v. Sorg.

The present proceeding is under the statute in force when the contracts were made, liens claimed and decree entered in the case reported in the 74th Ill. Whatever claims upon the premises appellants have were subject and servient to that of the complainant as landlord, and his claim, as that of every other owner of an interest in real estate, is subject to the dominant right of the State under its tax laws. By the terms of the lease, the lessees were bound to pay all taxes. This, the lessee, the Mecca Company, failed to do, and suffered the property to be sold for taxes.

The master finds that the complainant has paid $15,000 to redeem the same from tax sales. The notice of intention to forfeit and declaration of forfeiture were each entirely in accordance with the terms of the lease.

If a lessee fails to pay rent and taxes as he has covenanted to do and thereby creates a cause for forfeiture, the lessor may forfeit, and the holder of a lien must pay all arrears of rent to the lessor before he can acquire the rights of the lessee under the lease. Jones on Liens, Sec. 1273; Vanderbilt v. Williams, 40 Ill. App. 298; Williams v. Vanderbilt, 145 Ill. 238.

Appellants did file the statutory notice of claim of lien, but this notice did not mention the complainant, nor was it in any way addressed to him. Thereafter they took no steps for the perfecting of their claim until the filing of the present petition to quiet title. As against the fee owned by Sorg they acquired under the statute no lien.

Appellee having made his declaration of forfeiture and entered into possession of the premises, applied to a court of equity to give him that which he feared by such declaration and forfeiture he had not obtained. Having come into equity, he must do equity. The imposing of such conditions upon a complainant does not necessarily involve the possession of a legal or equitable claim by the defendant which he could enforce against the complainant either in an action at law or in equity.

Under the common law, by which, upon marriage, the property of the wife passed to the husband, while she could

not ordinarily compel him to make a settlement upon her out of such estate, if for the purpose of obtaining possession of the same or any part thereof, he appealed to a court of equity, that tribunal might, as a condition of granting the relief he asked, require him to make a reasonable settlement upon her. So, too, under statutes against usury, making void all usurious debts and obligations; if the debtor applies to a court of equity for an order requiring the bond or obligation given by him to be given up, the relief asked will be granted only upon condition that the debtor does equity by repaying to his creditor the amount which was actually loaned. Pomeroy's Equity Jurisprudence, Sec. 386.

Whether appellants or either of them have, in respect to the premises under consideration, equitable rights capable of enforcement, or which the court will require to be satisfied in whole or in part as a condition of giving to the complainant the relief he asks, is a question not presented to or considered by this court.

In this case the complainant's right, under the bill filed by him, is based upon his declaration of forfeiture and the possession thereafter taken. It may be that by this he obtained, as against the defendants to his bill, a perfect legal title to the premises in question. He is not, however, content with this, but asks a court of equity to declare that the defendants have no equitable claim in or to the premises or against him, and he has obtained in the court below a decree having that effect. He asked and has obtained a decree of a court of equity carrying into effect his declaration of forfeiture.

The rule is well settled, and to it, it is stated by Pomeroy, there are no exceptions, that a court of equity will not enforce a forfeiture. Pomeroy's Equity Jurisprudence, Sec. 459–460.

Our own Supreme Court in Douglas et al. v. Union Mutual Life Ins. Co., 127 Ill. 101, p. 116, said that "no rule is better settled than that a court of equity will not lend its aid to enforce a forfeiture because of a breach of a con-

Crandall v. Sorg.

dition subsequent in a deed. * * * And it will make no difference in such case that the aid of equity is sought upon the special ground of removing a cloud on the title." Nor will a court of equity enforce a penalty or compel a discovery that will expose a party to a penalty or forfeiture. Smith v. Jewett, 40 N. H. 530, 534; 2 Story's Eq., Sec. 1494; Story's Eq. Pleadings, Sec. 525; 1 Daniell's Chancery Practice, 443–536; Livingston v. Tompkins, 4 Johnson's Ch. (N. Y.) 415, 431, 432; Baxter v. Lansing, 7 Paige's Ch. 351–353; Fitzhugh v. Maxwell, 34 Mich. 138; President & Directors of the Atlas Bank v. President and Directors of the Nahant Bank, 3 Met. 581.

It appears in the present case that the Mecca Company contracted with Shields & Cook, defendants below, to erect upon the premises of the complainant a building to cost $420,000; that the total amount of the certificates issued by the architects for the construction of said building were $449,644.70. Appellants contributed a considerable amount in the way of labor and materials toward the construction of this building for which they have never been paid.

Appellants' claim that a court of equity shall declare that they have no right in or to said premises or upon him is based upon his declaration of forfeiture. This may be entirely good and all that he will ever need, but a court of equity will not aid him in the enforcement of his forfeiture.

The decree of the court below as regards appellants is reversed and the cause remanded with directions to dismiss the respective petitions of appellants for mechanic's liens without prejudice to proceedings other than for mechanics' liens under the statute and to dismiss the bill of the complainant, appellee, against appellants. Reversed and remanded with directions.