(Decided 1st March, 1883.)

---

H. A. GABLE and JAMES W. BEACHAM, SR., trading as GABLE & BEACHAM *vs.* THE PREACHERS' FUND SOCIETY OF BALTIMORE.

*Bona fide Purchaser for value, without Notice of an Unrecorded agreement for a Lease—Mechanics' lien.*

K. being the owner in fee of an unimproved lot of ground in the City of Baltimore, made a contract in writing, which was not recorded, with H., to give him a lease of said lot for ninety-nine years renewable forever, subject to a yearly rent of $3.50 per front

foot. At the request of H., G. agreed to, and did, furnish him materials to be used in the construction of a house on the lot, after knowledge of the terms of the agreement to lease, and relying on the final consummation of that agreement, and particularly of the condition that the rent to be reserved was $3.50 per front foot, and no more. Afterwards, while the house was in course of erection, K. executed a lease of the lot to H., reserving a rent of $5.50 per front foot, and at the same time sold and conveyed the reversion to P., the latter having actual knowledge at the time that the house was not then completed. A bill was filed by G. to enforce a mechanics' lien for the price of the materials so furnished by him, he claiming a prior lien not only upon the leasehold estate as actually created, but upon all the reversionary interest over and above the $3.50 per front foot, mentioned in the original agreement to lease. On a demurrer filed by P., it was HELD:

1st. That P. stood in the position of a *bona fide* purchaser of the reversion for value, and without notice of the agreement upon which the supposed equity of the complainant was founded.

2nd. That a party thus dealing with the owner of the reversion was only bound to look at the record to see the state of the title, and to see in what character the party in possession held title.

3rd. That the fact that he knew that a building was in course of erection upon the property, did not in such a case as this require him to go further.

4th. That as between the purchaser of the reversion and the material-man, the equity was with the former, and the bill could not be maintained as against him.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was submitted to MILLER, YELLOTT, STONE, ALVEY, IRVING, and RITCHIE, J.

*James H. Gable,* for the appellants.

*William L. Dallam,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This appeal is from an order sustaining the demurrer of the appellee to a bill in equity to enforce a mechanics' lien, and dismissing the same as to the demurring defendant, but without prejudice to the rights of the complainants against the other defendants. The bill was filed by Gable and Beacham, the material-men, against the appellee, a body corporate, and a number of other parties. So far as this corporation is concerned the facts appearing from the averments of the bill are substantially as follows:

Frank L. Knell and wife were owners in fee of certain unimproved lots in the city of Baltimore, and being desirous of leasing the same and having improvements erected thereon by the lessee, in order to secure ground rents, on the 16th of July, 1878, agreed in writing, with Jesse F. and Thomas E. Hampton, to lease the lots to them, for the term of ninety-nine years renewable forever, by a good and sufficient indenture, duly executed, in the manner and form in which such leases are usually drawn, reserving a ground rent at the rate of $3.50 per front foot, aggregating the amount of $52.50 on each lot. The Hamptons then applied to the complainants to furnish them materials and lumber to be used in the construction of houses on these lots, and complainants, after knowledge of the terms of the written agreement to lease, and relying upon the final consummation of that agreement, and particularly of the condition that the rent to be reserved was to be $3.50 per front foot and no more, contracted with and furnished to the Hamptons materials and lumber for two of the houses which they were then building on two of these lots, to the amount of $926.84. Afterwards on the 16th and 20th of December, 1878, while the houses were in course of erection and before they were finished, Knell and wife executed a lease to the Hamptons of the two lots on which these two houses were being erected, reserving a ground rent of $5.50 per front foot, making $82.50 on each lot, and at the

same time sold and conveyed their reversionary interest therein to the Preachers' Fund Society. The bill then charges that this Society actually knew that the houses were in course of erection and unfinished at the time they took the conveyances of these ground rents; that the houses are not yet completed and the leasehold interest therein, since the ground rent has been thus raised from $52.50 to $82.50 on each lot, is insufficient to pay the complainants' claim which they have duly filed within six months after the furnishing and delivery of the materials. They therefore claim a prior lien, not only upon the leasehold estate as now created, but upon all the reversionary interest over and above the $52.50 to be reserved on each lot as mentioned in the original agreement to lease, and they pray that the lots and houses may be sold in fee, and the proceeds brought into Court, and after allowing the Society such amount as they may be entitled to, not exceeding the rent mentioned in the agreement, capitalized at six per cent. or the sum of $875 on each lot, that their claim may be satisfied out of whatever balance may remain over and above the expenses of the sale.

It thus appears that the houses were built by the Hamptons, and the contract for materials was made with them as owners of, or as entitled to, a leasehold interest in the lots. It is a case therefore which falls within section 9, Art. 61, of the Code. That section provides that " where a building shall be erected by a lessee or tenant for life, or years of a farm or lot of ground, or by an architect, builder, or other persons employed by such lessee or tenant, the lien shall only apply to the extent of the interest of such lessee or tenant." In such case the interest of the reversioner is in nowise affected by the lien, and he is left to deal with that interest irrespective of any lien or claim material-men may have or may acquire against the owner of the leasehold estate. But here the Hamptons, at the time they commenced the buildings had only an equitable interest under

Gable & Beacham *vs.* Preachers' Fund Society.

an unrecorded written contract for a lease, and the complainants when they furnished the materials had actual knowledge of this fact. Without waiting to have the lease which the contract called for executed and recorded, or requiring it to be done, or even requiring the written contract itself to be put on record, they proceeded to supply their materials, relying simply, as they allege in their bill, "upon the faith of the final consummation of the said agreement to lease upon the terms therein mentioned." The lease subsequently executed created a larger rent than that stipulated for in the contract. The bill, however, does not aver that the Preachers' Fund Society had actual notice of the terms or even of the existence of this contract. They dealt with the owner of the reversion who had executed a lease of the lots for ninety-nine years renewable forever, reserving a rent of $82.50 on each lot. This ground rent they purchased and paid for, and they clearly stand in the position of *bona fide* purchasers of the reversion for value, and without notice of the agreement upon which the supposed equity of the complainants is founded. In our opinion a party thus dealing with the owner of the reversion is only bound to look at the record to see the state of the title, and to see in what character the party in possession holds title. The fact that he knows that buildings are in course of erection upon the property does not, in such a case as this, require him to go further. Here the Society, if they examined the record, as we may assume they did, found that Knell and wife held a fee simple title subject to a recorded lease to the Hamptons, the parties in possession, reserving a rent of $5.50 per foot, and they had no notice, actual or constructive, of any other claim than that which might be asserted against the leasehold interest thus shown by the record, for the buildings in progress. As between them and these material-men the equity is altogether with the former, and we concur entirely with the views so well expressed in the opinion of the learned

Judge of the Court below, where he says : " The material-man who relies upon his lien, must look to the state of the title of the land upon which his materials are to be used. If he finds the party with whom he deals is not the owner, but is the architect, builder or agent of the owner, the law prescribes a mode by which, upon notice to the owner, he can make the land liable. If he finds that such party is lessee or tenant for life, or years he can only claim a lien to the extent of such estate. The complainants, therefore, before parting with their materials should have looked into the title, and finding it the subject of an agreement to lease at a prescribed rent, they should have required the agreement, or the lease it calls for, to be recorded, so that no one could be led into a dealing with the title, without record notice of its condition.".

We are all clearly satisfied the complainants cannot maintain this bill as against this purchaser of the rever-sion, and shall therefore affirm the order appealed from. ·

*Order affirmed, and*
*cause remanded.*

(Decided 1st March, 1883.)