C. Edward Beehler *vs.* Van Buren Ijams, Assignee of Jacob W. Ijams, John Crockard, and others.

*Mechanics' lien—Article 63, section 4, of the Code—Leases for Ninety-nine years, Renewable forever—Question of Priority as between Mechanics' lien Claimant, and Grantee under a Deed duly Recorded—Article 21, section 14, of the Code—Bona fide Purchaser without Notice.*

Where materials are furnished to one who is the owner in fee, the lien attaches not only to the building itself, but also to so much of the ground as may be necessary for the ordinary and useful purposes of such building.

But where the property is leased for ninety-nine years, renewable forever, upon the payment of annual rent to the lessor and his assigns, and the building is erected by the lessee or his agent, the lien attaches to the leasehold estate only.

Beehler *vs.* Ijams, *et al.*

On the 29th of April, 1887, O. conveyed to B. a lot of ground in fee. This lot B. divided into eleven building lots, and on the same day (April 29th) he leased to C. three of these lots for ninety-nine years, renewable forever, upon the payment of an annual ground rent of $141· on each lot. On May 30th, 1887, at 8.30 A. M., the deed from O. to B. and the deed from B. to C. were recorded among the land records of Baltimore County. Earlier in the morning of the same day (May 2nd) at 7 o'clock, the buildings on the lots leased to C. were begun. In a proceeding to enforce a mechanics' lien for work and materials furnished upon said buildings, it was HELD:

1st. That the deed from G. to B., and the deed from B. to C. having been recorded within the time prescribed by the Code, took effect from the time of their execution and not from the time when they were recorded.

2nd. That although the Code provides that a mechanics' lien shall be preferred to a mortgage, unless the mortgage is recorded before the lien attaches, there is no such provision in regard to deeds; and, in the absence of such a provision, the title of the grantee relates to the time when the deed was executed.

An agreement was made between C. the lessee and B. the owner of the reversion, by which the buildings were to be erected at their joint expense, and when sold the proceeds were to be divided between them. B. was to superintend the erection of the buildings, with full authority to purchase materials; and it was upon his order the materials were furnished. While the buildings were in course of erection, B. sold his reversionary interest to a purchaser who bought without any notice of the private agreement between C. and B., and without notice that the materials were furnished on the order of B. HELD:

That the liens claimed could not be enforced against the reversionary interest thus sold and conveyed by B.

APPEAL from the Circuit Court of Baltimore City.

This was an equity proceeding for the enforcement of a mechanics' lien against three houses in Baltimore City, and the lots upon which they were built. The case is stated in the opinion of the Court.

Beehler *vs.* Ijams, *et al.*

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, FOWLER, and MCSHERRY, J.

*James W. Bowers, Jr.*, and *Fielder C. Slingluff*, for the appellant.

*Wm. P. Lyons, Beirne Lay, Benj. E. P. Crampton*, and *Robt. D. Morrison*, for the appellees.

ROBINSON, J., delivered the opinion of the Court.

We agree with the Court below, that the liens claimed in this case attach to and may be enforced against *the leasehold estate;* but we do not agree that they are enforceable against the *reversionary interest* of Beehler, the appellant.    Where materials are furnished to one who is *the owner in fee*, the lien, no doubt, attaches not only to the building itself, but also to so much of the ground as may be necessary for the ordinary and useful purposes of such building.    Sec. 4, Art. 63 of the Code. But where, as in this case, the property is leased for *ninety-nine years, renewable forever*, upon the payment of annual ground rent to the lessor and his assigns, and the building is erected by the lessee or his agent, the lien attaches to *the leasehold estate only.*    Sec. 9, Art. 63. The lessee, in such cases, has the absolute control and management of the property, and has the exclusive right to improve it, so long as he pays the stipulated rent, and renews the lease according to the terms of the covenant, and he and his representatives are entitled to hold, occupy and enjoy the property, and the reversioner can never, under any circumstances, obtain possession of the demised premises.    All this was said in *Crowe vs. Wilson*, 65 *Md.*, 479.

Now in this case, Ould, on the 29th April, 1887, conveyed to Bond a lot of ground in fee.    This lot Bond divided into eleven building lots; and on the same day,

April 29th, he leased to Carson three of these lots for ninety-nine years, renewable forever, upon the payment of an annual ground rent of $141, on each lot.

On May 2nd, 1887, at 8.30 A. M., the deed from Ould to Bond and the deed from Bond to Carson were recorded among the land records of Baltimore County. Earlier in the morning of the same day, May 2nd, at 7 o'clock, the buildings on the lots leased to Carson were begun, and the materials for which these liens are claimed were furnished in the course of the erection of these buildings. It thus appears that the buildings were begun *one hour and thirty minutes* before the deed in fee to Bond and the deed of the leasehold to Carson were filed for record; and, this being so, the lien for the materials it is claimed attached to the property in fee. But to this we cannot agree. The mechanics' lien attaches no doubt from the time the building is actually begun; but the deed from Ould to Bond and the deed from Bond to Carson, although recorded on the 2nd of May, were executed on the 29th of April, and having been recorded within the time prescribed by the Code, they take effect from the day of their execution. Code, Art. 21, sec. 14.

So, when these buildings were begun and when the liens attached, Carson *was the owner of the leasehold,* and Bond *was the owner of the reversion;* and, such being the interests of the respective parties, if the case rested here, there could be no ground for claiming that these liens attached not only to the leasehold, but also to the reversionary interest of Bond. For although the Code provides that a mechanics' lien shall be preferred to a mortgage, unless the mortgage is recorded before the lien attaches, there is no such provision in regard to deeds, and, in the absence of such a provision, the title of the grantee relates, as we have said, to the time the deed was executed.

It·seems, however, there was an agreement or under-
standing of some kind between Carson, the owner of
the leasehold, and Bond, the owner of the reversion,
that these buildings were to be erected at *their joint
expense,* and when they should be sold, the proceeds
were to be divided between them according to the value
of their respective interests.   Bond was to superintend
the erection of the buildings, with full authority to pur-
chase materials ; and it was upon his order that the ma-
terials were furnished.   In view of these facts, if the
question was one between the *lien claimants and Carson
and Bond,* it might well be said that the liens attached
to and were enforceable against both the leasehold of Car-
son and the reversion in Bond.   But on the 15th of
July, while the buildings were in the course of erection,
Bond sold and conveyed his reversionary interest, the
ground rents in question, to Beehler, the appellant, and
the proof shows that Beehler bought the ground rents
without any notice of the private agreement between
Carson and Bond, and without notice that the materials
were furnished on Bond's order.   And the question is
whether these liens can be enforced not only against the
leasehold estate, but also against the *reversionary* inte-
rest in the hands of a *bona fide purchaser without notice.*
And this question, it seems to us, is fully covered by
the case of *Gable & Beacham vs. Preachers' Fund Society,*
59 *Md.,* 455.   There Knell and wife, the owners in fee,
agreed in writing to lease certain lots to the Hamptons
for ninety-nine years, renewable forever, upon the pay-
ment of an annual ground rent of $52.50 on each lot.
Upon the faith of this agreement, the materials neces-
sary in the construction of the houses were furnished to
the Hamptons ; but, while the houses were in the course
of construction, Knell and wife leased the lots to the
Hamptons, reserving a ground rent of $82.50 *on each lot
instead of* $52.50, according to the written agreement

Beehler *vs.* Ijams, *et al.*

between them. Knell and wife then sold and conveyed their reversionary interest to the Preachers' Fund Society, and the bill was filed by the material men, to enforce their lien, not only against the leasehold interest, but also the reversionary interest conveyed to the society over and above the $52.50, the ground rent reserved in the agreement between Knell and wife and the Hamptons. But the Court held that these liens could not be enforced against the reversion in the hands of a *bona fide* purchaser, without notice of the agreement between the lessor and lessee, and upon the ground that one dealing with the owner of the reversion is "only bound to look at the record to see the state of the title, and to see in what character the party in possession holds title." So in this case, when the appellant examined the title record, he found that Carson was the owner of the leasehold estate, and that Bond was the owner of the reversion. He knew that Carson was entitled, as lessee, to the absolute control of the property, with the exclusive right to improve it by the erection of buildings ; and, if buildings were erected, he knew, too, that the lien for materials furnished, attached only to the lessee's interest. He was therefore a *bona fide* purchaser without notice of the agreement between Carson and Bond, and without notice, actual or constructive, of the liens now claimed. Under these circumstances, it is clear that these liens cannot be enforced against the reversionary interest thus sold and conveyed to him ; and, such being the case, the decree of the 12th of November for the sale of both *the leasehold and reversionary* interests must be reversed.

It follows from what we have said that the decree of September the 24th must also be reversed. Carson, it seems, had mortgaged his leasehold interest to Mrs. Schaeffer, and after the decree of the 12th of November, the Court, upon the joint petition of Beehler, the appel-

lant, and Mrs. Schaeffer, further decreed that as between the petitioners, the reversionary interest in the property was *primarily* liable for the payment of these liens.   But inasmuch as the liens cannot, as we have said, be enforced against the purchaser of the reversion, it follows that this decree was also erroneous.

> *Decrees reversed, and*
> *cause remanded.*

(Decided 18th March, 1890.)