Argued September 15; affirmed October 6, 1931

# FRANCIS BROS. *v.* SCHALLBERGER

(3 P. (2d) 530)

*M. B. Meacham,* of Portland, for appellant.

*R. F. Peters,* of Hillsboro (Hare, McAlear & Peters, of Hillsboro, on brief), for respondent.

RAND, J. This is an action of claim and delivery in which plaintiff seeks to recover possession of 900 bushels of wheat stored in buildings on the real property described in the complaint and of the value of $765. Plaintiff asserted ownership and right to the immediate possession of the wheat and sought to recover damages for the wrongful detention thereof. The answer was a general denial. The cause was tried

to the court without the intervention of a jury and was submitted upon an agreed statement of facts. As so stipulated, the facts were:

One B. K. Denney is the owner of 105 acres of land in Washington county and leased the same to one Von Allmen for a monthly rental of $125. Prior to January 13, 1930, Von Allmen had seeded a portion of the premises in wheat and oats and on said date he and his wife gave a promissory note to plaintiff in the sum of $415, payable July 1, 1930, and secured the same by chattel mortgage upon the growing crops upon the leased premises. The mortgage was duly executed and recorded. On February 28, 1930, Von Allmen was in arrears upon the rentals to Denney in the sum of $2,479, and on that day, on account of Von Allmen's default, Denney repossessed himself of the premises upon which the crop was then growing, and leased the premises to Schallberger, the defendant, and transferred to him the crops growing thereon. The wheat in controversy was harvested by defendant and plaintiff demanded possession thereof from defendant but defendant refused to deliver the wheat to plaintiff. Upon these facts, the learned trial court held that plaintiff was not entitled to recover and entered a judgment in favor of defendant from which plaintiff has appealed.

■ At common law the rule is that, if a lessee for a definite term sows a crop and it does not ripen or is not cut before the expiration of the term, the landlord is entitled to the crop unless by custom or by an express agreement with the landlord the outgoing tenant is given the right to enter and cut the crop after the expiration of the term. See *Carmine v. Bowen*, 104 Md. 198, and note, 9 Ann. Cas. 1135. The reason given for the rule is that it was the tenant's own folly to sow

when at the time of sowing he knew that his term would expire and he would be out of possession before he could reap.

However, in the case where the lease was one which could be terminated upon notice to quit, this rule of the common law, in its application to crops grown on lands leased for farming or agricultural purposes, has been abrogated by statute, for section 5-225, Oregon Code 1930, provides that:

"When the leasing or occupation is for the purpose of farming or agriculture, the tenant, or person in possession shall, after the termination of such lease or occupancy, have free access to the premises to cultivate and harvest, or gather any crop or produce of the soil planted or sown by him before the service of notice to quit."

A statute, containing these provisions in identical terms, was first enacted in 1866. See 2 B. & C. Code, section 5759. Although that section was repealed by chapter 185, L. 1909, its provisions were again enacted by the repealing act. Hence, the common-law rule above referred to, except as modified by statute, has not been in force in this state since the 1866 enactment. But four years prior to such enactment, another section of the statute provided (see 1 B. & C. Code, section 338) that:

"When in case of a lease of real property, and the failure of tenant to pay rent, the landlord has a subsisting right to reenter for such failure, he may bring an action to recover the possession of such property, and such action is equivalent to a demand of the rent, and a reentry upon the property; * * *."

With both statutes in force, this court held in *Myer v. Roberts,* 50 Or. 81 (89 P. 1051, 12 L. R. A. (N. S.) 194, 126 Am. St. Rep. 733, 15 Ann. Cas. 1031), that, as be-

tween the landlord and tenant, upon the forfeiture of tenant's estate by his own act, the title to all growing crops passes to the landlord, the court saying:

"When the estate of a tenant or occupant of land is forfeited, or the tenancy terminated by some act of his, and the landlord or owner reenters, the tenant, or occupant is not entitled to the crops growing thereon, but they pass to the landlord with the title to the land: 8 Am. & Eng. Enc. Law (2d Ed.) 319; Taylor, Land. & Ten. sec. 535; *Samson v. Rose,* 65 N. Y. 411."

After the rendition of that decision, said section 338, B. & C. Code, was repealed by chapter 185, L. 1909, but section 9 of the repealing act, now section 5-209, Oregon Code 1930, provides:

"The failure of a tenant to pay the rent reserved by the terms of his lease for the period of ten days (unless a different period be stipulated in the lease) after the same becomes due and payable, shall operate to terminate his tenancy, and no notice to quit or pay said rent shall be required to render the holding of such tenant thereafter wrongful; provided, however, if the landlord shall, after such default in payment of rent, accept payment thereof, such acceptance of payment shall operate to reinstate such lease for the full period fixed by its terms, subject to be defeated or terminated by subsequent defaults in payment of rent."

■ When said sections 5-209 and 5-225, Oregon Code 1930, and other sections of chapter 185, L. 1909, now chapter 2 of title V of the present code, are read together, it seems to be very clear that it was not the intention of the 1909 enactment to change the rule announced and followed in the Myer case. The mere reading of chapter 2, title V, Oregon Code 1930, will show that it was the intention of the statute to enumerate and define every tenancy that can arise from the leasing of real property and to prescribe the time and

manner in which the various leasehold estates so enumerated and defined may be terminated. In defining these tenancies, the statute makes no distinction between a tenancy growing out of a lease of land for farming purposes and one growing out of a lease of land for other purposes. The tenancy in each case is to be determined by the terms of the lease and not by the purpose for which the land was leased, for the statute expressly declares that: "The times and conditions of the holdings shall in each case be taken to determine the nature and character of the tenancy." Section 5-202, Oregon Code 1930.

■ In prescribing the manner in which the various leasehold estates defined by the statute may be terminated, the statute prescribes as to some of them that they may only be terminated by a service of notice to quit, while as to others no such notice is required. In defining the cases in which such service is required in order to terminate a leasehold estate, and in not requiring it in others, it follows that service of notice to quit is not necessary in any case unless the statute so directs. If this is the proper deduction to be drawn from the statute, then plaintiffs' contention that, upon the termination of Von Allmen's tenancy, because of his failure to pay rent, he had a right to the crops growing upon the land under the provisions of section 5-225, Oregon Code 1930, cannot be sustained. That statute applies to a tenancy which can and must be terminated by a notice to quit and not one which has been terminated by the act or default of the tenant, such as the nonpayment of rent. The statute also limits the right of the tenant in cases coming within its operation to harvest such crops only as were sown or planted before service of a notice to quit. In the instant case there was no service of notice made and

no requirement of the statute that such should be made in order to terminate the tenancy. Here, the tenancy was not shown to have been of uncertain duration, nor was it terminated by the act of the landlord under a power reserved in the lease but because of the tenant's own default. In such case, the statute relied upon has no application. In this case it was stipulated that Von Allmen had failed to pay the rent and that because of his failure the landlord reentered. The right to reenter and terminate the lease was given by section 5-209, above quoted, which, in effect, provides that the failure of the tenant to pay rent after the same becomes due and payable operates to terminate his tenancy, and no notice to quit or demand for the payment of rent shall be required to render the holding of such tenant thereafter wrongful. The only exception mentioned in the statute is that if the landlord subsequently accepts payment of the rent his acceptance operates to reinstate the lease. By force of the statute last referred to and the reasoning and ruling in the Myer case, Von Allmen's tenancy was lawfully terminated because of his own default and, upon reentry by the landlord, the title to the crops then growing on the land vested in Denney, the landlord.

██ Another contention of plaintiff is that, since Von Allmen was in default at the time the wheat was sown and no forfeiture had at that time been declared, Von Allmen's tenancy, because of his default, was of uncertain duration and subject to be terminated because of such default at any time by the landlord and that, therefore, Von Allmen became a tenant at will and, as such, entitled to harvest the growing crops when matured. Until the lease was terminated, Von Allmen's whole right to the possession of the premises was dependent upon the terms of the lease and his compliance

therewith. He could not by his own act, without consent of his landlord, change the duration or character of his tenancy for those matters were fixed by the terms of the lease itself. The obligation he assumed upon entering into the lease to pay rent was a condition imposed for the benefit of the lessor and not of the lessee, and when the condition was broken it gave to the lessor the right to terminate the lease but the lessor was not compelled to declare a forfeiture. He had a right to waive the forfeiture and enforce the tenant's obligation to pay. If he had done so the lease would still remain in force. Instead of doing that, the landlord elected to terminate the lease and, upon his reentry and repossession of the premises, the landlord became restored to his former estate and was in the same position he would have been if no lease had ever been made. This terminated Von Allmen's estate in the premises and entitled Denney to all unharvested crops then growing on the land.

■ Nor is there any merit in plaintiff's contention that, because Denney was lenient with Von Allmen in permitting him to increase his indebtedness from month to month, it operated as a waiver of the right to declare a forfeiture. The covenant to pay rent was a continuing one to which the doctrine of waiver does not apply. As said by Jones in his work on Landlord and Tenant, section 499:

"That lessors are indulgent and accommodating, allowing a default to continue and the amount of rent due to increase steadily, simply failing to put the tenant out, cannot be regarded as proof of their election to waive the right to declare a forfeiture and take possession, as provided for in the lease. The lessor of real property will not be estopped to claim the right to possession of the premises for nonpayment of rent simply because he permits default to be made and to continue as to such payments."

■■ Plaintiff also contends that, under the doctrine of emblements, the growing crop in question belonged to the tenant. The whole law of emblements, it has been said, is based upon two grounds—public policy and natural justice and equity. Upon the first ground, says Blackstone, "the encouragement of husbandry * * * being a public benefit, tending to the increase and plenty of provisions, ought to have the utmost security and privilege that the law can give it." The second ground is based upon the principle "that the tenant is justly entitled to gather his crops, even though his term has expired, and without regard to the question whether such crops are to be considered as in the nature of personalty or realty." Jones on Landlord and Tenant, section 567, and authorities there cited. In the same section the author says: "Where the reason of the doctrine fails, it has no application, as where a tenant terminates his estate through his own fault or misconduct." Another reason for holding that the law of emblements is not applicable to one whose estate is terminated by his own act or default is that the common law limited the right to emblements to those cases where the tenant had an uncertain interest which was determined, after sowing and before severance of the crop, by the act of God, the operation of the law, or the act of the landlord. 1 McAdam on Landlord and Tenant (4th Ed.), section 229. See also Jones on Landlord and Tenant, sections 493, 570; *Samson v. Rose,* 65 N. Y. 411; *Bagley v. Columbus Etc. R. Co.,* 98 Ga. 626 (25 S. E. 638, 34 L. R. A. 286, 58 Am. St. Rep. 325).

■■ This leaves as the sole question for decision whether plaintiff, under a chattel mortgage upon a growing crop given by a tenant who was dispossessed for default in rent, is entitled to the crop as against a

subsequent lessee who harvested the same by permission of the owner of the land. No case has been cited and we have found none where this question has been directly passed upon by this court. This question was ably decided in the court below and the applicable rules of law stated by Circuit Judge Bagley in a written opinion filed in the case. With his view of the law we are in thorough accord. He said:

"We are not concerned with cases involving voluntary surrender, surrender pursuant to the terms of the lease upon sale of the premises, or by estoppel of the owner; but only with a situation arising from forfeiture and reentry by the owner for default of the tenant. There is a wide distinction between forfeiture for condition broken and voluntary surrender by the tenant. In the latter the lessor obtains whatever estate is vested in the tenant at the time the new contract of surrender is entered into and through the surrender operates between the tenant and the landlord as an extinguishment of the interest which is surrendered, it does not extinguish the rights in third persons arising from purchase or mortgage of the crop growing upon the premises. As to them the surrender operates only as a grant subject to the rights of the mortgagee or purchaser in the property. Likewise there is a manifest difference between a forfeiture upon default of the tenant and a surrender pursuant to the leasing agreement rendering the term uncertain of duration by the act of the lessor. Under such termination the doctrine of emblements applies to crops seeded prior to notice ending the occupancy and necessarily the crop may be legally sold or mortgaged, as well as harvested and removed by the tenant. Also, there is a marked variation in forfeiture and estoppel. If a landlord has knowledge of the rights of a third person in a growing crop of his tenant by way of sale or mortgage and he in any manner ratifies the transaction between his tenant and a third person or actively misleads the purchaser or mortgagee to his injury, he would be estopped from contending otherwise. How-

ever, this is upon legal principles wholly independent of the contract between the landlord and tenant or the law of emblements. The adjudications in this and other jurisdictions in nonforfeiture cases have no application to the present situation.

"It is a rule of law that upon the termination of the lessee's rights all interests of third persons acquired and held by them under the lessee are also terminated, for they can acquire no rights in the premises other or greater than the original lessee has; thus the rights of purchasers or mortgagees of growing unharvested crops are terminated by the lessee's forfeiture of his term, for such rights are and necessarily must be held between them subject to the performance of the terms and conditions fastened upon the tenant's estate by the provisions of his lease. This rule is supported by the following authorities: *Gregg v. Boyd,* 23 N. Y. S. 918; *Abrahams v. Tappe,* 60 Md. 317; *Crandall v. Sorg,* 99 Ill. App. 22; *Williams v. Vanderbilt,* [145 Ill. 238], 34 N. E. 476 [21 L. R. A. 489, 36 Am. St. Rep. 486]; *Mills v. Matthews,* 7 Md. 315; *Gable v. Preachers' Fund Society,* 59 Md. 455; *Lenderking v. Rosenthal,* 63 Md. 28; *Carney v. Mosher,* [97 Mich. 554] 56 N. W. 935; *Debow v. Colfax,* 10 N. J. Law 128; *O'Leary v. Harris,* 89 N. J. Law 671, 99 Atl. 774.

"Nor are the Michigan cases contrary to this principle. In each of them the decision turned upon a question of surrender by the tenant and not forfeiture. The doctrine of emblements and the sequela of the right of forfeiture are wholly inconsistent. When a forfeiture is exercised it ends the whole estate of the tenant and carries with it all rights of all persons resting upon or arising out of the tenant's interest and estate under the lease. If this were not so it would be tantamount to granting to the tenant the power to create by voluntary or involuntary sales or liens, rights in third persons inconsistent with and beyond his own estate and would authorize the defeat of the contract rights of the lessor or owner. Certainly the tenant, by any form of agreement with other parties, can work no change in the contract by which he obtains his estate, without the

consent of the owner-lessor. The law of contracts does not contemplate or permit such result. Under the law, whatever rights plaintiff obtained in the crop of wheat was subject to the terms of the lease between Von Allmen and Denney. When Denney forfeited Von Allmen's leasehold interest and repossessed the premises, plaintiff's rights under the mortgage, as well as Von Allmen's interest and rights, were terminated and title to the growing crop vested in Denney, the landlord, and by his transfer vested in the defendant Schallberger and Schallberger would own the wheat harvested therefrom. It is clear Von Allmen could not, after forfeiture, claim the right of emblements and plaintiff's right is not superior to the source from which it obtained it.''

Judgment affirmed.

BEAN, C. J., KELLY and ROSSMAN, JJ., concur.