Argued September 9, 1947; reversed and remanded
September 23, 1947

## CALCAGNO *v.* HOLCOMB
(185 P. (2d) 251)

In Banc.

John C. Veatch, of Portland, (Veatch & Bradshaw, of Portland, on brief), for appellant.

W. J. Prendergast, Jr., of Portland (with Leo Levenson, of Portland, on the brief), for respondent.

BAILEY, J.

This is an action by plaintiff, Jack Calcagno, to recover from defendant, Blair Holcomb, damages for the destruction of a part of a crop of potatoes and parsnips grown on premises leased to plaintiff. From a judgment in favor of plaintiff, defendant has appealed.

The material facts in the case are substantially as follows: In 1943 Lillie Barker leased a certain 22-acre

tract of land in Multnomah county, Oregon, to plaintiff and Elwood Larsen for the period of one year, beginning March 1, 1943, and ending February 29, 1944, at a rental of $400, payable $200 upon the execution of the lease and the balance on or before August 1, 1943. The lease was on a printed form. It contained, among other provisions, the following: "Any holding over by the lessee after the expiration of the term of this lease, shall be as a tenancy from month to month and not otherwise."

Defendant purchased the premises from Lillie Barker and her interest in the lease on or about July 17, 1943. When the lessees failed to pay the balance of the rental of $200, due August 1, 1943, or to answer his letters requesting payment, defendant sent them a telegram in response to which Calcagno and Larsen, on November 24, 1943, called at his home. After some discussion between them, Calcagno and Larsen paid defendant the sum of $100, and two documents were thereupon executed reading as follows:

"Nov. 4, 1943

"Rec'd of Jack Calcagno and E. Larsen ($100.00) one hundred and no/xx dollars in full payment of lease on 22 acres more or less in Section 25, Township 1, N. R. 2 East, tax Lot #1—in the county of Multnomah, State of Oregon, which terminates Mar. 1, 1944.

[Signed] Blair Holcomb"

"Nov. 24, 1943

"In consideration of reduction in rent from $200 to $100 on lease of 22 acres more or less in section 25, township 1 N. R. 2 East,—Tax Lot #1, we, the undersigned, hereby agree to permit the owner, Blair Holcomb, to use the lands for his own purposes, which are now not planted, and from which

the present planted crops will be removed, and as soon as they are removed.

[Signed] Elwood H. Larsen
[Signed] Jack Calcagno"

These documents are in the defendant's handwriting and were executed on November 24, 1943. They are designated in the record as exhibits 2 and 3 respectively. The figure "2" was inadvertently omitted in the date on exhibit 2. Some time prior to March 1, 1944, Elwood H. Larsen assigned his interest in the lease to plaintiff.

After defendant acquired title to this 22-acre tract and prior to November 24, 1943, he entered upon and plowed or disked approximately six acres thereof which had not been cultivated by the lessees. It is plaintiff's contention that the only consideration for the reduction in the last installment of rental from $200 to $100, evidenced by exhibits 2 and 3, was the use by defendant of the six acres above mentioned, whereas defendant asserts that the consideration for this reduction was not limited to his use of the six acres but included, in addition thereto, the right granted to him by the lessees to enter upon and use all that portion of the 22-acre tract which was not planted on November 24, 1943, and the remainder of the tract as the planted crops thereon were removed.

Plaintiff testified that the defendant, on February 25, 1944, destroyed 8 rows of potatoes by disking or plowing the ground where they were planted. He said nothing about it until March 11, 1944, "because I figured it was a small loss; he [defendant] probably made a mistake, didn't know what he was doing." Defendant denied that any of the ground on which

plaintiff's potatoes were planted was plowed or disked until after March 10th.

On Saturday, March 11, the defendant's farm-hand started to disk the ground where plaintiff's parsnips were planted when he was stopped by plaintiff. That evening plaintiff called at defendant's home and insisted that the lease did not expire until March 31, 1944, and that he had until that time to remove his crop. After they had argued about the matter for a few minutes defendant procured his copy of the lease and called plaintiff's attention to the fact that it expired on February 29th. The conference ended by defendant giving plaintiff 24 hours, or until Monday morning, in which to remove his crop. On Monday morning defendant proceeded to disk or plow up all the remaining parsnips except nine rows, which were later removed by plaintiff.

Plaintiff testified that the parsnips were ready for harvesting about the first of January, but that he did not have the time or the help, with his other work, to remove all the parsnips on this 22-acre tract by the first of March, 1944. We now quote from his testimony:

"Q. Well, Dr. Holcomb [defendant] didn't prevent you from taking them off, did he?

"A. No.

"Q. Did he have anything to do with the failure to take your crop off of there before the 1st of March?

"A. No.

"Q. Didn't interfere with you in any way?

"A. No.

"Q. You knew when your lease expired?

"A. Yes.

"Q. Why didn't you get your crops off?

"A. I told you I was doing all my best I could taking them off.

"Q. What?

"A. I was doing all I could to take them off and I just didn't get to them, is all.

"Q. Well, did you request Dr. Holcomb to allow you to stay on there any longer?

"A. No.

"Q. You never made any request of him?

"A. No.

\* \* \* \* \*

"Q. Now did you pay any rental on this property on the 1st of March?

"A. On the 1st of March?

"Q. Yes.

"A. The rental was all paid.

"Q. Did you pay any rent for the use of the property after the 1st day of March of 1944?

"A. No.

"Q. Did you offer to pay any rent?

"A. No.

"Q. And Dr. Holcomb never told you that you could stay on there after the 1st of March, did he?

"A. No."

The plaintiff further testified that he did not remember signing exhibit 3.

Defendant's first assignment of error is based upon the refusal of the court to instruct the jury that the damage to the crop of parsnips "was occasioned subsequent to the first day of March, 1944, and subsequent to the time that plaintiff had any legal right to said" crop, and that therefore plaintiff was not entitled to any damage for loss of any parsnips "occasioned by the defendant's plowing the premises described in this lease."

We shall consider in connection with the foregoing assignment of error defendant's assignment of error No. 3, which is based upon the giving by the court of the following instructions:

"I will instruct you further that unless the lease were extended or the termination of the same were made indefinite or uncertain as a matter of law, that the lease of the plaintiff expired on March 1st, 1944, and that thereafter the plaintiff would have no legal right of entry upon said premises and the defendant would not be liable to the plaintiff for any damage done to any crops on the land after March 1st, 1944.

"The plaintiff claims that by the execution of the agreement between the plaintiff and Larson and the defendant on November 24th, 1943, which is plaintiff's exhibit No. 3, which you will have with you in the jury room, the termination of the lease and the right of the plaintiff to remove and harvest his crops was made indefinite and uncertain, and that the defendant, in consideration of being permitted by the plaintiff to enter upon and use part of the land prior to March 1st, 1944, granted an extension of time to the plaintiff to remove his crop after March 1st, 1944, in that the termination of the lease or the right of the plaintiff to be a tenant on the land was made indefinite and uncertain.

"On the other hand, the defendant contends that the agreement had no such effect and that the defendant, by reducing the plaintiff's rent to $100.00, gained the right to enter upon and use part of the land prior to March 1st, 1944, and there was no agreement between the plaintiff and the defendant to extend the time of the lease beyond March 1st, 1944.

"If the plaintiff and the defendant entered into an agreement whereby the termination of the lease was extended or made uncertain, then and in that event the plaintiff had a reasonable time to enter upon said premises and harvest his crops. In other words, he would have a reasonable time after March

1st, if such an extension were granted. A reasonable time is such a period of time as would be necessary to permit the plaintiff to harvest his crop of parsnips, taking into consideration the working conditions, availability of labor, condition of the crop, condition of the weather, size of the acreage to be harvested, and the amount of work that can be performed in each working day, and if this question comes up you are the judges as to what is a reasonable time.

"Now, therefore, if you believe from a preponderance of satisfactory evidence that the plaintiff and the defendant entered into such an agreement whereby the terms of the lease was made uncertain and that the plaintiff was entitled to a reasonable time to harvest his crops after March 1st, and that the defendant did not allow the plaintiff any such reasonable time after March 1st as in your judgment such time would be reasonable for him to harvest his crop, then your verdict should be for the plaintiff.

"On the other hand, if you are not satisfied by a preponderance of satisfactory evidence that no such agreement was made and entered into by the plaintiff and the defendant whereby the term of the lease was extended or made uncertain and that the right of the plaintiff to harvest his crop expired on March 1st, 1944, the plaintiff was not entitled to any period of reasonable time to harvest the same and your verdict should be for the defendant, because any damage, if any, was done to the crops after March 1st, 1944."

To the giving of the foregoing instructions the defendant excepted for the reason that the instructions "in effect, left to the jury the determination of the fact of whether or not said lease was extended, and which instructions left to the jury facts outside of the pleading and facts not supported by the evidence in the case, * * *" and for the further reason "that said instructions had the effect of submitting to the jury

the determination of the legal effect of a written instrument''.

Plaintiff did not claim in the circuit court, so far as the record discloses, that the termination of the lease was made indefinite and uncertain by the provisions of exhibit 3. His contention there was that after February 29, 1944, he was occupying the premises as a tenant from month to month and that no notice to quit had been given. Apparently he has now abandoned this last mentioned theory for it is not urged in this court. He relies entirely on the claim of indefiniteness as to the termination of the lease.

■ The language of exhibit 3 is not ambiguous, nor is it indefinite or uncertain. It was executed at the same time as exhibit 2 and as a part of the same transaction and should be construed in connection with that exhibit. No practical construction has been placed upon the provisions contained in exhibit 2 by the parties thereto, with the possible exception of defendant using portions of the land which were not planted and other portions thereof as the plaintiff removed vegetables therefrom.

■ It was the duty of the circuit court, under the facts disclosed by the record, to construe exhibit 3 and to instruct the jury in regard to its legal effect. § 5-305, O. C. L. A.; *Rutherford v. Eyre & Co.*, 174 Or. 162, 148 P. (2d) 530, 152 A. L. R. 1172; *Chadwick v. Oregon-Washington R. & N. Co.*, 74 Or. 19, 144 P. 1165; and also annotations under § 5-305, *supra*. Therefore it was error to submit the construction of this document to the jury.

Plaintiff relies principally upon the case of *H. R. Wyllie China Co. v. Vinton*, 97 Or. 350, 192 P. 400, in support of his contention that the court did not err in

submitting to the jury the question whether defendant "did not by executing exhibit 3 extend the time in which the" plaintiff "could remove his crop." In that case the court stated that all the negotiations and agreements made prior to September 26 were evidenced by writings (letters and invoices) and that the defendant argued that "since the contract governing the parties until at least September 26th is evidenced by writings, it was the duty of the court at all events to construe those writings". In answering that contention the court said that "the legal effect of a writing is ordinarily to be determined by the court and not by the jury" but that in the case then being considered by the court "some of the writings contain statements which afford support for the contention of the plaintiff that from the beginning Vinton agreed to pay on each invoice within fifteen days," and that on the other hand "some of the writings contain statements supporting the position taken by the defendant" as to the time within which payment was to be made. The court then observed:

"* * * We do not think that the court can say as a matter of law, after an inspection of the writings, that the agreement was as claimed by the plaintiff or as contended for by the defendant; but it was appropriately a question for the jury to decide what the parties intended, after viewing the writings in the light of the course of dealing followed by the parties, and in the light of the accompanying circumstances."

The holding in the Vinton case has no application here because of the material difference in the facts involved in the two cases.

Exhibit 2 is a receipt for $100 in "full payment of lease on 22 acres * * * which terminates Mar. 1, 1944."

By the provisions of exhibit 3, the lessees, in consideration of the reduction in rental "agree to permit" the defendant Holcomb to use the lands not in use by the lessees. There is nothing contained in the language of either one of these exhibits, or both when considered together, indicating an intention on the part of Holcomb to extend the duration of the lease beyond February 29, 1944. Under the provisions of exhibit 3 the lessees might shorten the term of their occupancy by removal of all the "present planted crops" prior to the termination of the written lease.

■ The terms of the lease under which plaintiff and Larsen entered into possession of the 22-acre tract fixed the date of the expiration of their tenancy as February 29, 1944, and any holding beyond that date by the plaintiff, without the consent of the defendant, was "wrongful and by force". § 8-308, O. C. L. A. *Hostetler v. Eccles,* 98 Or. 355, 194 P. 166; *Francis v. Schallberger,* 137 Or. 529, 3 P. (2d) 530, 83 A. L. R. 108. At no time did the defendant consent to the plaintiff occupying or using the property after February 29, 1944, except the 24-hour period granted on March 11 in which to remove his crop. Upon the expiration of his lease, to wit, February 29, 1944, plaintiff was not entitled to the crop growing thereon. *Francis v. Schallberger,* supra.

■ None of the plaintiff's parsnips were damaged prior to March 11, 1944, and therefore the court erred in not taking from the jury the question of damage to plaintiff's parsnips as requested by defendant.

■ Inasmuch as there was a dispute as to whether defendant damaged some of plaintiff's potatoes prior to March 1, 1944, the court properly submitted that matter to the jury. Such damages, if any, would be

614

unliquidated and would be due to the tortious act of the defendant. For that reason plaintiff would not be entitled to any interest thereon prior to judgment. § 66-101, O. C. L. A.; *Sorenson v. Oregon Power Co.*, 47 Or. 24, 82 P. 10; *Richardson v. Investment Co.*, 66 Or. 353, 133 P. 773. The rule laid down in *Public Market Co. v. Portland,* 171 Or. 522, 623, 130 P. (2d) 624, 138 P. (2d) 916, was never intended to apply to tort actions for unliquidated damages. There is no evidence in the case that the defendant acted maliciously in the destruction of these potatoes, and the court erred in failing to take from the consideration of the jury the question of exemplary damages.

Because of the errors committed by the circuit court, hereinbefore pointed out, the judgment appealed from is reversed and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion.