In re Robert G. NORDYKE and Maude M. Nordyke, Debtors.

ALLIS–CHALMERS CREDIT CORPORATION

v.

Robert G. NORDYKE and Maude M. Nordyke.

BORG–WARNER ACCEPTANCE CORP.

v.

Robert G. NORDYKE.

JOHN DEERE COMPANY

v.

Robert G. NORDYKE and Maude M. Nordyke.

LINDSAY CREDIT CORPORATION

v.

Robert G. NORDYKE and Maude M. Nordyke.

Bankruptcy No. 382–03624.
Adv. Nos. 83–0588, 83–0753, 82–0964 and 83–0427.

United States Bankruptcy Court, D. Oregon.

Oct. 4, 1984.

Bill Kloos, Eugene, Or., for debtors.

Aubrey Fitzgerald, trustee.

Howard M. Levine, Howard Speer, Eugene, Or., LaVerne M. Johnson, Corwallis, Or., Rohn Roberts, Eugene, Or., Peter Raphael, James Ray Streinz, Portland, Or., Edward M. Fitch, Redmond, Or., and Lawrence W. Erwin, Bend, Or., for creditors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW DISTRIBUTING PROCEEDS OF 1983 CLOVER CROP AND RULING ON CLAIMS

DONAL D. SULLIVAN, Bankruptcy Judge.

The Court on September 12, 1984 tried various pending motions for instructions, to turn over, and to distribute the proceeds of the 1983 clover crop. Julie Colling reported the proceedings.

The debtors, Mr. and Mrs. Robert Nordyke, are Christmas Valley, Oregon farmers who filed chapter 11 on November 12, 1982. The Nordykes anticipated at the time of filing that they would have a clover crop which would yield a gross of approximately $160,000. In fact, the crop upon the sale of the remainder in 1984 will yield gross proceeds of approximately $72,000. Supplemental schedules revealed that gross administrative claims relating to the 1983 crop approximate $124,000. During the 1983 crop season, the debtors, with the Court's approval, granted various liens on the 1983 crop; negotiated adequate protection orders with secured creditors calling for super administrative priority over other administrative creditors under 11 U.S.C. § 507(b); and incurred various ordinary administrative expenses.

The debtors converted to chapter 7 on July 9, 1984. Three creditors claimed liens and super priority totalling approximately $21,000 on the 1983 crop based upon stipulations and orders entered during the season. One landlord claimed the entire proceeds of the crop grown on his land because of nonpayment of rent under Oregon laws, which claim amounted to approximately $35,000 representing one-half of the proceeds produced by the debtors' total crop. One other creditor claimed super priority under 11 U.S.C. § 507(b) and another creditor claimed a lien, which claims totalled approximately $52,000 based upon stipulations and orders granting adequate protection and the inability of the estate to otherwise pay administrative expenses in full. The remainder of the claimants, among other things, asserted administrative priority with respect to unpaid rent, utility charges, fuel, and other services which contributed to the production of the 1983 crop and its proceeds. For purposes of this order, there will be insufficient funds from other sources to pay all administrative creditors.

The Court's findings with respect to the various claims follow:

*Allis Chalmers Credit Corporation.* Allis Chalmers Credit Corporation ("Allis Chalmers") claimed $39,211.17 from the limited crop proceeds on hand based upon an order to which the debtors stipulated dated September 21, 1983 requiring payment of $36,064.59 as an administrative expense from the 1983 crop proceeds. The order granted super priority under 11 U.S.C. § 507(b) in the event the payment is insufficient. The order did not grant a crop lien but, for purposes of this decision, the distinction between a lien and super priority should not make any difference. Allis Chalmers resisted any reexamination of the order although it claimed the right to add $3,146.58 in interest, presumably under the provision of the order granting it the right to seek reconsideration or additional protection.

■ Allis Chalmers' claim should be reduced for the purpose of allowance under 11 U.S.C. § 507(b) to $33,000. To the extent that the order of September 21, 1983 may overcompensate Allis Chalmers for losses resulting from the stay, the order of September 21, 1983 granting adequate protection is not final for the following three reasons.

■ First. Allis Chalmers, in the context of this case, misconstrues the concept of adequate protection. Adequate protection is a device intended to provide additional protection against loss to a secured creditor arising from continuation of the automatic stay of 11 U.S.C. § 362 as called for by the circumstances of the case. *Crocker National Bank v. American Mariner Industries, Inc. (In re American Mariner Industries, Inc.),* 734 F.2d 426 (9th Cir. 1984). By its nature, adequate protection is not final unless all parties later treat it as final. The concept is not intended to be a disguised form of partial assumption of an executory contract requiring the cure of prepetition delinquencies although if loss from the stay is shown, it may have this effect to the extent of the loss. If the parties elect not to treat the order as final, as here, loss and compensation, therefore, are the triggering events calling for the final allowance of a given amount as adequate protection under 11 U.S.C. §§ 503(b) and 507(b) which necessarily depend upon the duration of the stay and must occur later.

■ Second. The grant of super administrative priority status cannot be reexamined but if Allis Chalmers elects not to seek relief from the stay because of nonpayment, the amount of the grant must be determined at a later hearing. The order obtained by Allis Chalmers, by its terms, created a fact issue to the extent that "the administrative expense priority set forth ... shall prove to be inadequate to protect ACCC's interest" and it is not final where the amount of super priority is reserved by law and by the agreement, and is asked for by Allis Chalmers. The lack of finality of the agreement works both ways. If the creditor elected to allow the stay to remain in effect, in spite of failure to make the payments, or comes back for more, the finality of the payments called for is waived and the payments are neither a floor nor a ceiling on the amount of the ultimate allowance of § 507(b) priority. In this event, and because of the creditor's election, the order is not self-executing as to amount. Nonpayment, inadequacy of funds, and conversion to chapter 7, are additional future events contemplated by the order, which events require a hearing on the overall issue of adequate protection and not just the inadequacy of the primary grant. Others affected by the claim of super priority are entitled to notice under 11 U.S.C. § 503(b) and have a right to be heard at such a hearing. Allis Chalmers, by asking for interest on top of the payments called for in the order, seems to recognize the lack of finality as to the amount.

■ Third. In any event, the adequate protection order entered in this case can be reexamined under other principles on motion of those who are not privy to the order if Allis Chalmers' construction of the order were to be adopted. *In re Callister,* 15 B.R. 521, 8 B.C.D. 446, 453 (Bankr.D.Utah 1981) called the problem of excessive valuation of the collateral and resulting depreciation an error in the stipulation and reexamined agreed § 507(b) priority. Under *Callister,* a creditor should not be rewarded for carelessness, much less greed, in negotiating a stipulation for adequate protection that overstates entitlement.

■ A postfiling order which upgrades the prepetition unsecured portion of a debt owing to a secured creditor by cross-collateralization or otherwise may be reexamined at the request of a later appointed trustee or other creditors, even though the debtor-in-possession stipulated to the order. *Otte v. Manufacturers Hanover Commercial Corp. (In re Texlon Corp.),* 596 F.2d 1092 (2nd Cir.1979); Fed.R.Bankr.P. 9024. Necessarily, if the Court can reexamine the amount of an administrative lien under the principles of *Texlon,* it follows that the

Court can determine the grant of super priority under 11 U.S.C. § 507(b) after the lien proves insufficient.

■■ Procedurally, there can be no collateral estoppel or res judicata under *Texlon* with respect to creditors who are not notified of the hearing on the order, who may not have been in existence at the time of the order, and who would not have been concerned with the issue of super priority under 11 U.S.C. § 507(b) until after the filing of the chapter 7 and the funds available to pay administrative expenses proved to be inadequate. This must be the rule because the creditor has greater leverage and bargaining power, as mentioned in *Texlon* and in *Callister*, and the debtors are concerned with their own survival in negotiating the order and lack the neutrality necessary to protect the interests of other administrative creditors, some of whose claims have not yet matured.

■■ Allis Chalmers should receive payment as an administrative expense for the withholding of its collateral. The payment should be adequate to compensate for depreciation arising from the use and to compensate for the delay imposed in receiving its money based upon the liquidation value of the collateral at the time of filing and an estimate of the time necessary to foreclose. *In re American Mariner Industries, Inc., supra; Union Leasing Co. v. Peninsula Gunite, Inc. (In re Peninsula Gunite, Inc.)*, 24 B.R. 593 (Bankr. 9th Cir.1982). Section 507(b) priority is granted if funds are not available in the estate to pay all administrative creditors:

■■ On the merits, I find that Allis Chalmers is entitled to a claim under 11 U.S.C. § 507(b) in the amount of $33,000. Specifically, I find that during the period of the chapter 11 operation, the value of the collateral subject to Allis Chalmers' lien depreciated $23,500, that the starting value of the property at the time of filing was $50,000, and, considering the factors articulated in *American Mariner*, and the lack of evidence as to market interest, that the creditor is entitled to one year's interest at 19% computed on the beginning value of the collateral. To the extent that these findings differ with the adequate protection order, I find that a mistake both of law and fact has occurred within the meaning of *Texlon* and *Callister*, respectively. Funds are not available to pay Allis Chalmers in full from the chapter 7 estate.

The debtors purchased the equipment subject to Allis Chalmers' security interest prior to the 1982 crop season from Geo. Pyle Farm Machinery, Inc. under four contracts calling for combined payments of approximately $90,000, $30,000 down and the balance payable in two to three equal annual installments at interest rates varying from 18% to 20%. At the time of Allis Chalmers' motion to modify the stay of 11 U.S.C. § 362, there was an unpaid balance of approximately $72,000 and a delinquency alleged to be $36,064.59, which delinquency appears to have been later chosen in the adequate protection order as the payment required to continue the automatic stay.

Three witnesses, consisting of the debtor, an auctioneer called by the other creditors, and George Pyle, a principal of the seller which sold the paper to Allis Chalmers, all agreed that the value of the equipment after the return of the collateral was $22,500–$23,000 except for one piece of equipment which the debtor thought was more valuable. The witnesses disagreed as to the value of the collateral at the time of the filing of the chapter 11 in November of 1982 and gave conflicting testimony. They testified in this regard to valuations ranging from $29,000 by the auctioneer to $56,500 by George Pyle, with the debtor assigning a beginning value of approximately $50,400. This resulted in chapter 11 depreciation ranging from approximately $6,500 to $34,000.

Of the witnesses who testified, the debtor, who expressed some uncertainty as to the final value of one item of equipment, is the most credible because his testimony at the time of the hearing was less likely to be colored by expectations as to the outcome and because he was motivated to know market values at the time.

■ *Borg-Warner Acceptance Corp.* Borg-Warner Acceptance Corp. ("Borg-Warner") is entitled to a claim of lien and § 507(b) priority for the use of a diesel tractor in the amount of $4,800 based upon eight months usage of the equipment.

Borg-Warner held a security interest in a new White diesel tractor which, in November of 1980, the debtors also purchased from Geo. Pyle Farm Machinery, Inc. for $55,219.60 with about one-third down. This creditor filed a complaint for relief from the stay on June 30, 1983. The debtors stipulated to an order settling the claim by granting a lien as adequate protection in the amount of $600 per month from August 1, 1983 until it became apparent that a reorganization would not occur. It became apparent to the debtors' lawyer that a reorganization could not occur in April of 1984 because of the failure of the 1983 crop, an infestation of cutworms in the 1984 crop, and the unyielding demands of creditors claiming proceeds of the 1983 crop.

Unlike the Allis Chalmers' claim, no one successfully presented evidence that this creditor's claim overstated the depreciation arising from the use of the equipment and the time allowance which must be made under *American Mariner.* Considering the auctioneer's and the debtor's testimony regarding the appraisal schedule, the allowance of the amount for a period of eight months is appropriate.

■ *Geo. Pyle Farm Machinery, Inc.* Geo. Pyle Farm Machinery, Inc. ("Geo. Pyle") is entitled to a lien claim on the proceeds of the 1983 crop to the extent of $13,617.

Geo. Pyle leased additional equipment to the debtors pursuant to an agreed order of November 11, 1983. This order expressly assigned the proceeds of the 1983 crop as security for the lease payments. This is a valid administrative assignment which must be paid from the crop proceeds. Section 507(b) priority does not arise. The amount is based on an hourly rate for hours of use of a combine which no one disputes.

■ *Lindsay Credit Corporation.* Lindsay Credit Corporation ("Lindsay") is entitled to a lien claim on the proceeds of the 1983 crop in the amount of $7,630.19 for use of its pivots during the 1983 crop season, based upon an agreed order of September 28, 1983.

Lindsay, besides unsuccessfully moving to compel adoption of its contract, filed a complaint to modify the automatic stay on April 18, 1983. The creditor sought to recover irrigation pivots which it had leased to a predecessor of the debtors in 1977 who in turn assigned the lease to the debtors in connection with the debtors' purchase of land. The lease called for annual payments. The parties settled the complaint for the annual payment due in 1983 and a promise that the 1984 payment would be paid from the 1983 crop proceeds and be included in the debtors' anticipated plan of reorganization.

■ The settlement clearly granted a lien as security for the 1983 proceeds. The debtors did not adopt the leases and did not use Lindsay's equipment for the 1984 crop. There is no evidence attacking the lien on any basis. Lindsay is not entitled to payment for 1984, either as a priority lien claim or as an administrative expense because the equipment was not used.

■ *John Deere Company.* John Deere Company ("John Deere") is entitled to an administrative claim and § 507(b) priority for an amount that cannot be fairly determined from the evidence presented at the hearing. John Deere has not yet repossessed and appraised its collateral for reasons which are not clear, and should be allowed 21 days from the date of this order within which to file its claim, if it has a claim. The trustee should allow or object to the claim under the same principles applied to Allis Chalmers, within 21 days thereafter. A hearing will be scheduled upon request of John Deere.

John Deere filed a complaint on December 14, 1982 to modify the stay imposed by 11 U.S.C. § 362. The complaint sought alternative relief in the form of recovery of

its collateral under three security agreements executed in 1980 and 1981 covering various items of farm equipment, or adequate protection payments of $550 per month. The complaint alleged the gross accelerated balance due at the time to be $8,268.94. The value assigned to the collateral by John Deere in the complaint was $6,600. With the possible exception of one or two payments, all of the equipment under the contract should have been paid for by approximately December 1, 1983. On October 20, 1983, the Court approved an order which granted to John Deere adequate protection in the form of an administrative priority of $8,215.02 to be paid from the 1983 crop, which payment would appear to almost pay off the contract. The order and stipulation expressly gave John Deere super priority under 11 U.S.C. § 507(b).

*The Landlords.* Gylan Mulkey and Marian O. Huebner are entitled to administrative rent for the use of their land for the 1983 crop season in the amounts of $9,900 and $12,101 respectively. These amounts are not entitled to super priority under 11 U.S.C. § 507(b).

The debtors raised their 1983 seed crop on land owned by these two claimants. Gylan Mulkey leased his land to the debtors on January 12, 1981 under a three-year lease retroactive to the prior March for annual payments of $6,600 payable on November 15 of each year. The lease expired by its terms on April 30, 1983. The debtors paid only the first year's rent. The debtors leased the Huebner land, including an irrigation system for the property, effective February 10, 1981. Annual payments were $8,074 which were due on or before January 10 of each year. The Nordykes made only one payment covering the period of February 10, 1981 to February 10, 1982.

As a matter of federal law, the debtor-in-possession may use property of the estate under 11 U.S.C. § 363(d) provided that administrative rent is allowed. The debtors lawfully occupied both parcels of land at the time of filing under existing leases, neither of which, in spite of nonpayment of rent, had been terminated prior to filing. This right of possession was property of the estate under 11 U.S.C. § 541(a)(1) which the landlords could terminate only by obtaining relief from the automatic stay imposed by 11 U.S.C. § 362(a)(3). The debtors had a right to use the land under 11 U.S.C. § 363(d) until the automatic stay was terminated under 11 U.S.C. § 362(c)–(f). If the debtors do not adopt the lease under 11 U.S.C. § 365 which, among other things, requires curing delinquencies and providing assurance of future payments, they must pay for the use of the premises as an administrative expense. The pro rata rent called for under the lease is presumptively the measure of the fair rental for the use of the premises. *Brown v. Danning (In re Frederick Meats, Inc.),* 483 F.2d 951, 952 (9th Cir. 1973); *Gold Coast Seed Co. v. Beachner Seed Co. (In the Matter of Gold Coast Seed Co.),* 24 B.R. 595 (Bankr. 9th Cir. 1982).

The debtors-in-possession are in the business of planting and harvesting crops and, as a matter of federal law, have a right to harvest crops which they have sown from property of the estate. Although not without doubt in regard to expired leases, Oregon law additionally gives a tenant the right to remove a crop which he planted, even though his tenancy has terminated or expired. O.R.S. 91.230; *Wodecki v. West,* 165 Or. 504, 108 P.2d 521 (1940); *Smith v. Howe,* 91 Or. 279, 176 P. 805 (1918); *but see Calcagno v. Holcomb,* 181 Or. 603, 185 P.2d 251 (1947). Where a tenant refuses to surrender premises and holds over, he has a right to remove fixtures, which right is analogous to the law of emblements applicable here. *State Highway Commission v. Demarest,* 263 Or. 590, 606, 503 P.2d 682, 690 (1972). Any lien right that the landlord may claim to the crop for delinquent rent by Oregon statute is expressly avoided under 11 U.S.C. § 545(3).

Both landlords were well aware of the rent deficiencies and the debtors' continued occupancy and use of their land,

although they may not have been aware of their right to seek adequate protection under 11 U.S.C. §§ 362(d) and 363(e). Until the automatic stay is terminated by an order for relief under the cited statutes, the debtor has a right to harvest crops on the land. This right is independent of the lease and any extrajudicial action taken by the landlords to terminate the debtors' rights or to secure the crop violated the automatic stay of 11 U.S.C. § 362(a)(3). Specifically, Gylan Mulkey's nonjudicial efforts to secure possession and the crops after expiration of the lease were void.

■ Gylan Mulkey and Marian O. Huebner are entitled to allowance for administrative rent for the period of occupancy prior to surrender, which in this case is 18 months. Prorating the annual rent of $6,600 called for in the Mulkey lease and $8,074 called for in the Huebner lease, the landlords are entitled to an administrative allowance of $9,900 and $12,101 respectively.

*Summary.* The lien claims and super priority claims under 11 U.S.C. § 507(b) should be paid first, followed by payment of the expenses of the trustee under chapter 7, which are entitled to priority over chapter 11 administrative expenses under 11 U.S.C. § 726(b). The total of the lien claims and § 507(b) super priority claims are estimated at $59,047, which will be increased by the allowance to be made to John Deere. The balance remaining shall augment those funds of the estate arising from the chapter 7 liquidation. The trustee should first satisfy chapter 7 administrative claims and prorate the balance among the chapter 11 administrative claimants.